**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MARINA T. MORGADO,

      Plaintiff,

v.

F. STEVEN TRIFFLETTI, ,
FRANKLIN ASHLEY TRIFFLETTI,
ALLAN J. COSTA, AND
TRIFFLETTI & COSTA, P.C.,

      Defendants.

Civil Action No.

**NOTICE OF REMOVAL**

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS:**

Pursuant to 28 U.S.C. § 1446, Defendants F. Steven Triffletti, Franklin Ashley Triffletti, Allan J. Costa, and Triffletti & Costa, P.C. (collectively "Defendants"), by their attorneys, hereby file this Notice of Removal. As grounds for this removal, Defendants respectfully submits that:

1. On or about October 9, 2024, Plaintiff Marina T. Morgado ("Plaintiff") commenced a civil action against Defendants in the Plymouth County Superior Court of the Commonwealth of Massachusetts, entitled *Marina T. Morgado v. F. Steven Triffletti, Esq., Franklin Ashely Triffletti, Esq., Allan J. Costa, Esq., & Triffletti & Costa, P.C.*, Civil Action No. 2483-cv-00841 ("State Court Action").

2. On or about October 16, 2024, Defendant Franklin Ashley Triffletti received service of the Complaint and Civil Action Cover Sheet in connection with the State Court Action. On or about October 18, 2024, Defendant F. Steven Triffletti likewise received service of the

Complaint and Civil Action in connection with the State Court Action. On or about October 18, 2021 Defendant Triffletti & Costa P.C. received service of the Complaint and Civil Action in connection with the State Court Action. On or about October 21, 2024, Defendant Allan J. Costa received service of the Complaint and Civil Action Cover Sheet in connection with the State Court Action.

3.      Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of all process, pleadings, and orders served upon Defendants to date in the State Court Action are attached hereto as <u>Exhibit 1</u>.

4.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been filed with this Court within thirty (30) days of service of the Summons and Complaint in the State Court Action.

6.      No further pleadings or proceedings have occurred in the State Court Action.

7.      The State Court Action is being removed to this Court pursuant to 28 U.S.C. § 1331, on the grounds that original jurisdiction of this action is in this Court by virtue of federal question jurisdiction.

8.      This Court has original jurisdiction over this action by virtue of federal question jurisdiction.

9.      Specifically, in the Complaint, Plaintiff asserts claims arising under the following federal statute:

- Count XII: 42 USC § 1983.

10.     Because United States District Courts have original jurisdiction over actions involving federal question, pursuant to 28 U.S.C. § 1331, removal of this case to this Court under the circumstances herein is proper.

11.     Accordingly, the State Court Action is removable to the Court under 28 U.S.C. § 1441(a).  Furthermore, this Court may exercise supplemental jurisdiction over the Plaintiff's state law claims. *See* 28 U.S.C. §1367(a).

12.     Venue is proper because the Plymouth County Superior Court of the Commonwealth of Massachusetts, the court where the State Court Action is pending, is embraced within "the district and division" of this Court.  28 U.S.C. § 1441(a).

12.     By copy of this document and in accordance with the Certificate of Service, Defendants are providing notice to all Parties in this action advising of the filing of this Notice of Removal pursuant to 28 U.S.C. § 1446(d).

13.     Defendants submits this Notice without waiving any defenses to the claims asserted by Plaintiff or conceding Plaintiff has pled claims upon which relief may be granted.

14.     Defendants will notify the Plymouth County Superior Court and Plaintiff of this Notice of Removal by filing with the Superior Court a Notice of Filing of Notice of Removal.  A copy of that notification, which will be sent to the Plymouth County Superior Court, is attached hereto as Exhibit 2.

WHEREFORE, Defendants prays that the State Court Action now pending against them in Plymouth County Superior Court of the Commonwealth of Massachusetts be removed therefrom to this Court.

Respectfully submitted,

F. STEVEN TRIFFLETTI, ,
FRANKLIN ASHLEY TRIFFLETTI,
ALLAN J. COSTA, AND
TRIFFLETTI & COSTA, P.C.

By their attorneys,

*/s/ John G. Bassilakis*
Stephen T. Paterniti, BBO #564860
Stephen.Paterniti@jacksonlewis.com
Austin D. Jones, BBO #709313
Austin.Jones@jacksonlewis.com

John G. Bassilakis, BBO #710734
John.Bassilakis@jacksonlewis.com
Jackson Lewis P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
Dated: November 5, 2024                              (617) 367-0025

## CERTIFICATE OF SERVICE

This hereby certifies that on this 5th day of November 2024 a true and accurate copy of the above document was filed with the Court via the ECF system and served upon Plaintiff's counsel via email:

Ryan J. Matthews, Esq.
115 Sandwich Street, Second Floor
Plymouth, MA 02360
Ryan@RyanJMatthews.com

*/s/ John G. Bassilakis*
Jackson Lewis P.C.

4866-2546-7381, v. 1

4

# EXHIBIT 1

10/9/24

1

# COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss

PLYMOUTH SUPERIOR COURT
DOCKET NO.: 2483CV00841

MARINA T. MORGADO       )
      )
v.       )
      )
F. STEVEN TRIFFLETTI, ESQ.,       )
FRANKLIN ASHLEY TRIFFLETTI, ESQ.       )
ALLAN J. COSTA, ESQ, AND       )
TRIFFLETTI & COSTA, P.C.       )
      )



COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 9 2024

## COMPLAINT

### I.    PROCEDURAL POSTURE

Plaintiff, Marina T. Morgado ("Marina" or "Plaintiff"), brings this action against F. Steven Triffletti, Esq., Franklin Ashley Triffletti, Esq., Allan J. Costa, Esq. and Triffletti & Costa, P.C. (collectively "Defendants"), for denying full and equal benefits of employment; engaging in retaliation against the Plaintiff; fostering, encouraging and enabling a hostile and offensive workplace environment; and discrimination on the basis of Marina's gender, national origin, age, race and/or mental health status. Prior to the present filing, Marina satisfied all administrative prerequisites to filing in court by filing with the Massachusetts Commission Against Discrimination ("MCAD"), requesting withdrawal, and receiving a Right to Sue notice from same attached hereto as Exhibit A.

In addition to the above, Plaintiff is seeking to recover damages under the tort theories of negligent infliction of emotional damage, intentional infliction of emotional damage, and civil rights violations (both federal and state). Plaintiff also seeks to recovery for the statutory violations of the wage act and personnel file statute committed by the Defendants.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

1

## II.   INTRODUCTION TO THE FACTS

Marina is a woman born in Mozambique, a country located on the east coast of Africa who presents as racially ambiguous. Marina holds dual citizenship from Portugal and the United States. Marina is 57 years old. Marina's skin tone presents as fair when not exposed to the sun but during the summer months she presents as having a dark skin tone. Throughout her employment with Defendant Triffletti & Costa, P.C., she was subjected to differential treatment on the basis of her age, gender and national origin. This treatment created a hostile and offensive workplace environment. Throughout her employment with Defendant, Triffletti & Costa, P.C., Marina witnessed multiple, consistent ethical violations to include but not be limited to significant financial elder abuse. Throughout her employment Marina was subjected to workplace harassment and bullying by a subordinate employee.

On multiple occasions, Marina repeatedly raised her concerns to superiors and management. Her concerns were ignored. The evidence will show that Marina's constant abuse by her colleagues were ignored. The treatment ultimately rose to the level of a constructive discharge of her employment when she tendered her resignation on April 3, 2024.

## III.   PARTIES

1. The Plaintiff, Marina Morgado (hereafter "Marina") is an individual residing in East Taunton, Bristol County, Massachusetts.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

2

2. Defendant, Triffletti & Costa, P.C. (hereafter "T&C") is a law firm located in Plymouth, Massachusetts having a registered agent for service of F. Steven Triffletti.

3. Defendant, F. Steven Triffletti, Esq., (hereafter "FST") an individual residing at 56 Boot Pond Road, Plymouth, Plymouth County, Massachusetts. FST is a founding partner of Triffletti & Costa, P.C.

4. Defendant Franklin Ashley Triffletti, Esq. (hereafter "FAT") is an individual residing at 6 Green Ash Trial, Plymouth, Plymouth County, Massachusetts. FAT is an attorney at Triffletti & Costa, P.C. Upon information and belief, FAT is the son of FST and acted in a quasi-supervisory/management role at all times relative to this complaint.

5. Defendant Allan J. Costa, Esq. (hereafter "AC") is an individual residing at 21 Sweeney Drive, Plymouth, Plymouth County, Massachusetts. AC is a partner of Triffletti & Costa, P.C.

6. Individual Defendants, FST, FAT, and AC, are all attorneys in good standing in the Commonwealth of Massachusetts and are subject to the rules of professional conduct governing attorneys.

## IV.  FACTS

7. Marina is a career paralegal having spent over twenty (20) years in the legal profession. Prior to her employment with T&C she worked at a medium sized law firm in Boston, Massachusetts.

8. Over the course of her career, Marina has excelled in all aspects of her employment.

9. In or around the fall of 2019, Marina sought a new workplace in order to reduce her commute and allow for a more serene work-life balance.

10. Marina contacted Robert Half of Boston, Inc. (hereafter 'Robert Half"), a human resources firm, to secure employment closer to her home in East Taunton.

11. Marina made it clear to Robert Half that she no longer wanted to handle either criminal matters or probate and family cases.

12. Working with an associate at Robert Half, Marina learned of a job opening as a real estate paralegal at T&C.

13. Marina interviewed initially by phone with Brianna Mellor (hereafter "Mellor").

14. Following the initial interview, Marina moved on in the process to an in-person interview with Mellor and Katelynn R. Lapham (hereafter "Lapham").

15. At the time, Mellor acted as the firms' controller.

16. Despite her extensive experience in the legal profession, Marina was unfamiliar with the term 'controller' as applied to support staff but understood the title to mean that Mellor served in a supervisory position.

17. At all relevant times, Lapham acted as the firm's Supervisor of Paralegals.

18. Mellor, at all relevant times, served in a supervisory position at T&C.

19. Lapham, at all relevant times, served in a supervisory position at T&C.

20. Mellor was in charge of hiring and firing employees at T&C.

21. During the in-person interview Marina was informed by Lapham that the position had changed and that it would be as a paralegal for AC whose practice focuses primarily on motor vehicle accidents, personal injury, corporate and civil litigation.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

4

22. Mellor and Lapham both told Marina that AC did not have a paralegal and that they had been handling his cases.

23. Mellor and Lapham both told Marina that most of the employees had worked there for 8-10 years.

24. Mellor and Lapham both told Marina that T&C was a great place to work.

25. Mellor and Lapham both were effusive in their praise for the working environment at T&C.

26. Later that afternoon AC contacted Marina and spoke briefly with her before offering her the position as his paralegal.

27. After learning of the changed duties and responsibilities associated with the position, Marina expressed concern to her recruiter at Robert Half but reconciled the change by taking solace in the fact that full benefits would be offered.

28. T&C had agreed to pay the full medical insurance coverage; pay 75% of the deductible; dental coverage; paid time/sick time off; and retirement contribution.

29. An offer of employment was made and a letter was sent to Marina by Mellor on November 3, 2020. Exhibit B.

30. Thereafter, a representative from Robert Half and Mellor negotiated and agreed to a reduction of the 90-day probationary period.

31. The negotiated terms of employment were that T&C agreed to reduce the 90-day probationary period to a 30-day period. Exhibit C.

32. Specifically, Mellor represented to Robert Half that Marina would be granted a 30-day probationary period because she was 'eager to have her [Marina] start.' Exhibit C.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

5

33. The reduction of the probationary period from ninety (90) days to thirty (30) days was particularly important to Marina as she carried medical insurance for herself and her daughter (a college student).

34. Marina declined or passed on other job offers and accepted the offer made by T&C based, in part, on the representations and promises made to her by Mellor, in her official capacity as "controller" of T&C.

35. Two weeks after Marina had started her employment with T&C, Mellor advised her that she was recanting the offer of a reduced probationary period and that Marina would need to wait until 90 days had passed before being eligible for health insurance for her and her daughter.

36. Shortly after Marina's employment began, she received an employee handbook from T&C. Exhibit D.

37. The employee handbook from T&C outlines the firm's anti-harassment and discrimination policy. Exhibit D (Section 4-Standards of Conduct and Employee Performance)

38. T&C's anti-harassment and discrimination policy defines prohibited conduct and encourages employees who feel that they have been harassed to "immediately report such conduct to their supervisor or any other member of management." Exhibit D (Section 4-4.1- Harassment and Discrimination)

39. At all relevant times, Marina fully complied with the policies as set forth in T&C's employee handbook.

40. Shortly after beginning her employment with T&C, Marina learned that AC had a previous paralegal, Noreen Toal.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

6

41. This was not previously disclosed to Marina prior to her accepting the position at T&C.

42. Marina was told by Lapham that AC's previous paralegal did something to anger Mellor and was fired.

43. Marina inquired if AC interceded in any way on behalf of the paralegal and was told that "Brianna [Mellor] runs the show here."

44. Shortly after beginning her employment with T&C, Marina was instructed to work with FST on criminal files.

45. At the time, FST was working closely on his probate files with a designated paralegal, Kristen Kneeland (hereafter "Kneeland").

46. In or around July of 2022, Kneeland took maternity leave and Marina was assigned all of FST's probate files.

47. During her course of working with FST on probate files Marina witnessed and expressed concern regarding numerous ethical violations to include but not be limited to:

   a. Overbilling of probate clients;

   b. Billing administrative work done by support staff at the attorney's hourly rate;

   c. All work on probate files being done by support staff and billed at the hourly rate of attorneys;

   d. Financial elder abuse to include but not be limited to FST receiving an appointment as a power of attorney followed by selling assets to pay for a grossly inflated legal bill;

e. FST committing no less than three (3) instances of fraud on the Massachusetts Registry of Motor Vehicles by submitting false medical examinations performed by a client/debtor to petition for the return of driver's licenses.

f. FST's expressed personal feelings about African American people; Bi-racial people; and Transgender people working in the court system. All made verbally and/or thru email communication to the entire office.

g. Clients being diverted to a real estate agent, Emily Goodridge of Keller Williams (FAT's wife and FST's daughter in law) without disclosure to either the Court, opposing counsel, or clients;

48. Marina repeatedly expressed concerns to her supervisors about the above-referenced multiple violations of the ethical rules.

49. On multiple occasions Marina was told to draft and file motions seeking leave for FST to appear for a virtual hearing.

50. The grounds for the motions were that FST is elderly, morbidly obese, unvaccinated and in deplorable health.

51. At all relevant times, FST worked closely with a personal trainer.

52. On multiple occasions Marina saw affidavits with FST's signature filed with the Courts indicating that he could not appear in person due to his age, health and vaccination status.

53. Marina was forced to be complicit in the ethical violations of FST, FAT, AC and T&C.

54. Marina was instructed to be complicit in the ethical violations of FST, FAT, AC and T&C.

55. Marina was aware that FST frequently travelled out of the country during the time period in which he was instructing support staff to represent to various Courts that he was unable to appear in Court.

56. Marina was aware that FST frequently travelled out of the country during the time period in which he was instructing her to draft, and file pleadings requesting that he appear virtually due to his COVID comorbidities.

57. Marina's concerns about the widespread, pervasive ethical violations taking place at T&C were ignored by her supervisors.

58. Marina's concerns about the widespread, pervasive ethical violations taking place at T&C were minimized by her supervisors.

59. The hostile and offensive workplace environment Marina was forced to endure was a result of her concerns being ignored by her supervisors at T&C.

60. The hostile and offensive workplace environment Marina was forced to endure was a result of her concerns being minimized by her supervisors at T&C.

61. On multiple occasions, Marina raised her concerns with Mellor regarding the fraudulent motions and paralegal work being billed at the attorneys' rate.

62. Mellor responded: "FST gets away with everything" and "we don't bill at paralegal rates. Our billing system has the ability to do so but all work is billed under the attorney rate, including administrative work".

63. When Marina raised her concerns with AC regarding the fraudulent activity FST was committing with elderly clients, he would tell her:

   ■ "you know Steve, he gets away with everything";

   ■ "fucking Steve" and

   ■ "it's his bar card, not yours."

64. Each time Marina raised the ethical violations of FST to AC, the violations themselves were minimized and her concerns were dismissed.

65. Marina's concerns about the widespread and pervasive ethical violations taking place at T&C were ignored.

*Jane Doe's[1] Case*

66. FST serves as the town moderator for the Town of Plymouth and has done so for approximately twenty (20) years.

67. When acting in his capacity as town moderator, FST is acting under the color of law.

68. In or around February of 2024, the Town of Plymouth planning board voted to remove a member, JANE DOE, after she made a comment that was perceived as racially motivated by another member.

69. FST represented JANE DOE during the local furor that engulfed her following the statements attributed to her.

70. The matter became relatively high profile in the Town of Plymouth.

71. Marina was instructed by FST to send signature lines for affidavits to JANE DOE's friends and supporters.

72. Upon receipt of the signed signature lines, Marina was then told to write the substantive portion of the affidavits which FST dictated to Marina via telephone.

73. The affiants who signed the signature line were unaware of the substantive portion of the affidavits at the time they signed under the pains and penalties of perjury.

---

[1] The client's name is known to T&C and the Plaintiff, but is left out here out of an abundance of caution after the Defendants threatened legal action against the Plaintiff as a result of her petitioning activity.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

10

74. During a call with FST, FST disclosed to Marina that "it was only a matter of time before he [the planning board member] played the race card".

75. Marina was instructed to attend the planning board meeting with JANE DOE and FST as his Paralegal.

76. FST and Marina met with JANE DOE prior to the meeting to select which of the affidavits she would present to the board.

77. FST decided that it would be best if she [DOE] read the affidavit from an African American doctor to the planning board.

78. FST remarked that it was important that the planning board noted that "a black man is supporting a white woman who is being accused of being racist".

79. Marina shared her concerns with Lapham, who indicated that FST should never have been involved in the JANE DOE matter because he "has no filter."

80. Additionally, Lapham suggested to Marina that she shouldn't "worry about it, FST is not fazed by any of this."

*Racially Charged Offensive Statements:*

81. Throughout her employment, FST made numerous racially charged and insensitive comments to Marina to include but not be limited to:

   ■ "you get so black in the summer but that's because you were born in Africa. I can't catch up to you."

   ■ "wait till I get back. I am actually darker than my black local trainer here in the Caribbean".

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

- his "grandson is so cute, he looks like a Gerber baby when Gerber babies were white and cute, but that will change when they change them to black babies like everything else".

82. On March 14, 2022, Marina shared her concerns about FST's racially insensitive and offensive statements with Mellor in an e-mail message writing specifically: "I don't want to make a big deal and jeopardize my job but does Steve think I'm black? He often talks about how 'black I get and it's because I was born in Africa'". Exhibit E.

83. Mellor responded in an e-mail dated March 14, 2022:

> …I'll deal with Steve without having to mention your concerns. I thought I heard him [FST] say something about black, but I was on a call. He's harmless but clueless to what is appropriate in the office. **AND THIS IS WHY I STAY AWAY FROM EMPLOYING AFRICAN AMERICANS**. Old school as he puts it.
> Exhibit E
> Emphasis added

84. At all relevant times, Mellor was in charge of hiring and firing for T&C.

85. The pattern and practice of the firm was to circulate most e-mails to all employees.

86. On one occasion an email was circulated regarding the doing away with the term "Grandfathered in" after a suggestion by the SJC that the term had racist origins.

87. FST called and instructed Marina to send an email to AC and ask for his opinion as to an alternative phrase.

88. FST remarked to Marina that he needed AC's input because "his boys are black and he would know better".

89. Marina told FST that she would not send it just to AC and that his children were bi-racial.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

12

90. FST responded that "bi-racial is a word used by black people when they don't want to identify as being black."

91. Marina found this statement to be highly insensitive, offensive and racially charged.

92. At the time FST made the insensitive and racially charged remarks, Marina told FST that her cousins are bi-racial and identify as such.

93. On one occasion, an email was circulated regarding FST's opinions regarding transgender people working on the court system. This email went back and forth with the whole staff copied on it.

94. FST specifically named a particular person working in the court system and made disparaging comments about them.

95. FAT sent an email message suggesting the discourse was not appropriate for the workplace.

96. Marina shared with AC that she was offended, embarrassed and did not feel comfortable with FST's email.

97. Marina requested that AC should have a discussion with FST about sending emails of that nature.

*Harassment*

98. During the course of Marina's employment, T&C also employed a receptionist, Erin.

99. Erin's duties and responsibilities as a receptionist were to assist the attorneys and paralegals with telephone calls and incoming / outgoing mail.

100.    Erin was subordinate to Marina at all relative times during their respective employment.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

13

101.    Erin was close personal friends with Mellor.

102.    Kneeland was a longtime friend of Lapham.

103.    During the course of her employment, Marina witnessed Lapham and Kneeland disregard any scheduled hours that required them to be in the office and, instead, coming and going as they pleased.

104.    Marina witnessed Lapham approving time sheets for both, Erin and Kneeland for hours they were not in the office.

105.    Kneeland routinely delegated and assigned tasks to Erin.

106.    In response, Erin would do the task as assigned and without complaint.

107.    In or around late July of 2022, Kneeland took a maternity leave.

108.    During Kneeland's maternity leave, Marina was instructed to delegate tasks to Erin as Kneeland would.

109.    Marina began delegating tasks to Erin per instruction by her supervisors at T&C.

110.    Marina delegated to Erin the same tasks and in the same fashion that she witnessed Kneeland delegate to Erin.

111.    In response to Marina delegating tasks to her, Erin initiated a campaign of torment, bullying and harassment against Marina.

112.    Though Marina was forced to endure the treatment on a daily basis and is unable to recall each offensive act or comment, Marina specifically recalls that that abuse included but was not limited to:

   a.    Erin throwing mail at Marina;

   b.    Erin throwing mail at Marina's desk;

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

14

c. Erin called Marina 'Old hag', "Old Bitch", "fucking bitch", "Fucking Cunt"

d. After a computer malfunction at Marina's work station that resulted in a computer smoking, Erin commented that she "would love to see [Marina] go up in smoke." This statement was witnessed by both, AC and a former employee.

e. Erin instructed a new employee to not send Marina's messages to her, stating "Fuck her, I hate that Bitch". This conversation took place in the morning and was overheard by Marina and Mellor. Mellor assured Marina that she would "handle it".

113. Prior to July of 2022, Marina and Erin were able to work in a professional and collegial manner.

114. Between approximately July of 2022 and Marina's eventual departure from T&C, Erin bullied, intimidated and harassed Marina nearly every day.

115. As a result of the bullying, intimidation and harassment, Marina would drive home in tears every day.

116. In November of 2022, the harassment, bullying and intimidation became so pervasive, unrelenting and severe that Marina applied for, and was granted, a medical leave of absence on the basis of major depressive disorder.

117. Marina's application for medical leave was supported by a documented medical opinion asserting that the cause of the major depressive disorder was the treatment at T&C and/or workplace environment.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

15

118.    Marina was granted medical leave from November 18, 2022, to January 3, 2023, due to the stress at work caused by the hostile and offensive workplace environment.

119.    Prior to Marina returning to T&C following her medical leave, assurances were made by her supervisors at T&C that the issues were addressed and that she would be safe from bullying, intimidation and harassment in the workplace.

120.    Upon return from her medical leave, Marina was hopeful that either her tormenter would no longer be employed or her attitude would have benefitted from corrective action taken by the Defendants.

121.    Marina's hopes were dashed as Erin immediately picked up where she left off tormenting Marina.

122.    Marina estimates having nine (9) total meetings with supervisors at T&C to include but not be limited to: AC, Lapham and Mellor between July of 2022 and April 3, 2024, specifically to discuss the treatment to which she was subjected while employed at T&C.

123.    Marina frequently requested assistance and/or protection from her tormentor from AC, Lapham and Mellor.

124.    Marina spent numerous hours talking to Lapham about the torment and retaliation that she was experiencing by Erin.

125.    Marina and Lapham would text and email about said torment.

126.    Marina's complaints were ignored.

127.    Marina's complaints were ignored because she raised concerns about the pervasive ethical violations ongoing at T&C.

128.    Marina's requests for protection from her supervisors at T&C were ignored.

129.    Marina found herself isolated, alone and tormented after returning from a medical leave initiated by major depressive disorder caused by stress at work.

130.    AC and FST made assurances to Marina that the matter would be handled and that she would be protected.

131.    AC and FST's assurances were proven to be false and the torment continued until Marina was finally forced to resign her employment from T&C.

132.    Supervisors at T&C to include, but not be limited to, FST, AC and FAT, ignored Marina's pleas for help and allowed her tormentor to continue tormenting Marina.

133.    To the contrary, Marina's tormenter, Erin, was allowed to shirk and, in some cases, ignore not only her duties and responsibilities as a receptionist, but also her scheduled work hours.

134.    Marina watched as her tormentor, Erin, would stroll into the office late and be greeted by multiple ringing phones for which it was her responsibility to answer and address.

135.    The office hours at T&C started at 8:00 a.m.

136.    Erin's duties and responsibilities included opening the office at 8:00 a.m., taking the phones off sleep mode and answering incoming calls.

137.    On at least one (1) occasion, Erin arrived at the office at 8:45 a.m. while the main phone line was incessantly ringing.

138.    On this occasion, Marina noted that the caller ID indicated that FST was the person who was calling the office.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

17

139.     Using the intercom function, Marina rang Erin's extension using the intercom function and told her that FST was on the phone for her.

140.     Erin responded "Are you fucking kidding me? I am not even logged in yet."

141.     This was at approximately 8:45 a.m., forty-five (45) minutes after the office had opened and in response to learning that the named partner was calling her extension.

142.     Erin then loudly announced a co-worker that "Marina is a fucking bitch and now she refuses to answer the phone."

143.     Erin told the co-worker in a tone and volume that suggested she intended for Marina to hear.

144.     Marina shared with AC what had just happened and AC stated "I know, I heard it and I back you up 100%. I have had numerous meetings with her about her tardiness."

145.     AC completely disregarded the hostile and offensive nature of Erin's comments to and about Marina.

146.     Marina watched as AC and FST permitted Erin to not only neglect her duties as a receptionist, but also continue to torment her.

147.     Marina would often receive flowers and thank you cards from grateful clients.

148.     On one occasion, Marina received flowers from a client and a card thanking her for all of her help.

149.     Erin received the flowers and was walking the vase to Marina's desk.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

150.    A co-worker asked Erin if the flowers were for her and Erin responded, "No, they're for Marina. I am so fucking tired of her and her flowers. I'd love to throw these flowers at her face".

151.    Corrective action was never taken by the Defendants with regard to the behavior exhibited by Erin.

152.    Erin's behavior and treatment of Marina was permitted because Marina had raised concerns about the pervasive ethical violations ongoing at T&C.

153.    Erin's behavior and treatment of Marina was permitted because Erin was fully aware that T&C was allowing time theft by Lapham, Kneeland, Erin and Mellor.

*Constructive Discharge*

154.    Marina scheduled a meeting with FST and AC on January 29, 2024, to discuss the hostile and offensive workplace environment and its impact on her personal and professional well-being.

155.    AC texted Marina prior to the January meeting telling her "Don't worry, you are good. FST just needs time to think about what we are going to do and we will have separate meetings with both of you. But you are good."

156.    During the meeting, both AC and FST promised Marina that something was going to be done to address her concerns.

157.    Marina continued her employment with T&C following the meeting based on the assurances and promises of FST and AC.

158.    The January 29, 2024, meeting between Marina, FST and AC had no impact on Erin's treatment of Marina.

159. The torment, bullying and workplace harassment continued by Erin following the January 29, 2024, meeting.

160. On or about March 27, 2024, Marina emailed AC and expressed that her employment situation had not changed since their meeting of January 29, 2024.

161. In that email, Marina expressed her dire concern that nothing was going to change.

162. Marina then requested to have a meeting with AC after Easter weekend.

163. The requested meeting with AC was scheduled to take place on April 3, 2024, at 3:00 p.m.

164. During this meeting, Marina asked AC what the plan was for all the tormenting and retaliation that had been going on for nearly two (2) years.

165. Marina cited the dozen meetings and numerous emails exchanged between them about her problems with Erin.

166. Specifically, Marina mentioned the meeting on January 29, 2024, at which promises were made to her by both FST and AC, named partners and supervisors at T&C.

167. In April 2024, Marina remarked to AC that almost three (3) months had passed since being assured that the situation would be addressed.

168. However, the torment, retaliation and name calling persisted.

169. AC could not offer a solution, only more empty promises for which he had shown a considerable inability or refusal to keep.

170. Marina's continued employment with T&C became untenable, and she was forced to tender her resignation in the form of two (2) weeks' notice.

171.    When she arrived at home that evening Marina received text messages from another co-worker.

172.    Marina requested the co-worker not message her outside of work hours.

173.    Despite her requests, the texting continued.

174.    Following receipt of the text messages, Marina resigned from her employment at T&C effective immediately the night of April 3, 2024.

175.    Due to the failure of T&C to protect Marina from the torment, bullying, and retaliation (as required pursuant to the T&C handbook), Marina was forced to resign.

176.    Marina lost income and full health insurance coverage to both herself and her daughter.

177.    T&C punished Marina instead of her tormentor and failed to provide a safe, healthy and racism free work environment for Marina.

*Personnel File:*

178.    T&C's employment handbook mandates that the firm keep and maintain personnel files. Exhibit D at 2.7.

179.    Marina and Mellor had numerous verbal and email exchanges about Erin's behavior in the office.

180.    During those communications, Marina requested to see her personnel file on many occasions, including in writing, as required by M.G.L. c. 149 sec 52C. Exhibit F.

181.    Marina specifically requested her personnel file in writing on September 15, 2022. Exhibit F.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

182.    Ther personnel file was not provided to Marina in the timeframe contemplated by the statute following her request.

183.    Marina made additional requests for her personnel file including one in writing on Friday October 14, 2022. Exhibit G

184.    On October 14, 2022, Mellor replied stating that "Due to being a small firm, we do not keep personnel files". Exhibti G

185.    Mellor's statement was patently false.

186.    After her employment ended, counsel for Marina requested her personnel file, in writing, on April 4, 2024, pursuant to M.G.L. c. 149 sec 52C.

187.    T&C produced what it purported to be Marina's personnel file on or about April 8, 2024.

188.    The purported personnel file was produced two (2) years five (5) months and seven (7) days after Marina's written request of September 15, 2022.

189.    The material that was produced to counsel for Marina was simply papers that Marina had maintained in her drawer with copies of her ID and a copy of her prior medical leave for a planned surgery.

190.    On April 28, 2024, Marina, through counsel, filed a Complaint with the MCAD.

191.    Marina's filing of a complaint with MCAD constituted constitutionally protected petitioning activity.

192.    On August 19, 2024, T&C filed a position statement with the MCAD.

193.    At the time T&C's position statement was filed with MCAD, the principles of T&C had an ethical duty of candor to MCAD.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

22

194. The position statement was signed under the pains and penalties of perjury by FST, AC and FAT.

195. The position statement filed by T&C was rife personal attacks of Marina.

196. The personal attacks stretch back twenty (20) years and constitute personal attacks and disclosures irrelevant to the case at bar.

197. The position statement filed by T&C was rife with misrepresentations of fact.

198. The position statement filed by T&C referred to documents that are required to have been contained within a personnel file but were not produced as part of the personnel file provided to Marina's counsel.

199. The position statement of T&C constituted a direct threat to Marina for excerising her constitutionally protected right to petitioning activity.

200. The Defendants threatened Marina in order to cause her to refrain from further petitioning activity.

*Wage Act Violation:*

201. On or about April 10, 2024, Marina requested her final paycheck.

202. On April 12, 2024, counsel for Marina received a federal express delivery with Marina's purported final paycheck from T&C.

203. The check (Citizens Bank #14974) was drawn on a general account, which was not the payroll account.

204. On April 18, 2024, Marina brought the check to a Citizens Bank branch and was advised that the check could not be honored.

23

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### UNLAWFUL EMPLOYMENT DISCRIMINATION
### BASED ON NATIONAL ORIGIN

205.    The Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this count.

206.    Defendants discriminated against Plaintiff, Marina Morgado, in employment by repeatedly using hostile and racially charged language; requiring her to appear at an after-hours planning board meeting as a prop; failing to protect her from an abusive co-worker and denying her privileges of employment to include but not be limited to a safe workplace.

207.    Defendants' actions violated M.G.L. c. 151B §4 by discrimination on the basis of national origin.

208.    As a direct result of Defendants' actions, Plaintiff Marina Morgado was denied full and equal enjoyment of a safe workplace and other terms, conditions and privileges of employment.

### SECOND CLAIM FOR RELIEF
### UNLAWFUL EMPLOYMENT DISCRIMINATION
### BASED ON AGE

209.    The Plaintiff repeats and realleges the proceeding paragraphs as if fully set forth in this count.

210.    Defendants discriminated against Plaintiff, Marina Morgado, in employment by repeatedly using hostile and racially charged language; requiring her to appear at an after-hours planning board meeting as a prop; failing to protect

her from an abusive co-worker and denying her privileges of employment to wit: a safe workplace.

211.    Defendants' actions violated M.G.L. c. 151B §4 by discrimination on the basis of age.

212.    As a direct result of Defendants' actions, Plaintiff Marina Morgado was denied full and equal enjoyment of a safe workplace and other terms, conditions and privileges of employment.

213.    As a direct result of Defendants' actions, Plaintiff Marina Morgado received adverse employment actions based on her age.

### THIRD CLAIM FOR RELIEF
### UNLAWFUL EMPLOYMENT DISCRIMINATION
### BASED ON SEX

214.    The Plaintiff repeats and realleges the proceeding paragraphs as if fully set forth in this count.

215.    Defendants discriminated against Plaintiff, Marina Morgado, in employment by repeatedly using hostile and racially charged language; requiring her to appear at an after-hours planning board meeting as a prop; failing to protect her from an abusive co-worker and denying her privileges of employment to wit: a safe workplace.

216.    Defendants' actions violated M.G.L. c. 151B §4 by discrimination on the basis of sex.

217.    As a direct result of Defendants' actions, Plaintiff Marina Morgado was denied full and equal enjoyment of a safe workplace and other terms, conditions and privileges of employment.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

218.     As a direct result of Defendants' actions, Plaintiff Marina Morgado received adverse employment actions based on her sex.

## FOURTH CLAIM FOR RELIEF
## UNLAWFUL EMPLOYMENT DISCRIMINATION
## BASED ON RACE

219.     The Plaintiff repeats and realleges the proceeding paragraphs as if fully set forth in this count.

220.     Defendants discriminated against Plaintiff, Marina Morgado, in employment by repeatedly using hostile and racially charged language; requiring her to appear at an after-hours planning board meeting as a prop; failing to protect her from an abusive co-worker and denying her privileges of employment to wit: a safe workplace.

221.     Defendants' actions violated M.G.L. c. 151B §4 by discrimination on the basis of race.

222.     As a direct result of Defendants' actions, Plaintiff Marina Morgado was denied full and equal enjoyment of a safe workplace and other terms, conditions and privileges of employment.

223.     As a direct result of Defendants' actions, Plaintiff Marina Morgado received adverse employment actions based on her race.

## FIFTH CLAIM FOR RELIEF
## RETALIATION

224.     The Plaintiff repeats and realleges the proceeding paragraphs as if fully set forth in this count.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

26

225.    Plaintiff raised concerns about widespread and sustained conduct by attorneys that violated the Rules of Professional Conduct.

226.    Plaintiff repeatedly asked supervisors to intervene and assist in convincing Erin to stop engaging in harassing conduct.

227.    In so doing, Plaintiff was engaged in protected conduct.

228.    As a result of Plaintiff raising concerns about ethical violations, she suffered an adverse employment action to include but not be limited to: failure by Defendants to promote the Plaintiff; failure by Defendants to provide a safe workplace environment, and constructive discharge.

229.    Plaintiff suffered damages and continues to suffer damages as a result of the Defendants' actions.

## SIXTH CLAIM FOR RELIEF
## CONSTRUCTIVE DISCHARGE

230.    The Plaintiff repeats and realleges the proceeding paragraphs as if fully set forth in this count.

231.    As the conditions around her at T&C worsened, Plaintiff pursued all reasonable alternatives to resigning to include lodging internal complaints; speaking with her supervisors; and taking a medical leave.

232.    Every avenue of prospective relief sought by Marina led to further isolation and torment rather than relief and assistance.

233.    Upon her return from medical leave, Plaintiff noted that nothing had changed.

234.    Defendants were on notice of the workplace conditions.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

27

235. The working conditions at T&C were so intolerable that she was forced to resign from her employment.

236. As a direct result of Defendants' actions, Plaintiff Marina Morgado was forced to resign from her employment with Defendants.

## SEVENTH CLAIM FOR RELIEF
## VIOLATIONS OF THE WAGE ACT

237. The Plaintiff repeats and realleges the proceeding paragraphs as if fully set forth in this count.

238. Following her constructive discharge from the Defendants, the Defendants issued a check to Plaintiff purportedly to compensate her final wages as well as her accrued paid time off.

239. Plaintiff attempted to cash the check at the bank that it was drawn on (Citizens) but was advised by bank personnel that the check could not be cashed.

240. Upon information and belief, the Plaintiff believes her final check was written on an account with insufficient funds.

241. Plaintiff received her final wages three business days after having received the insufficient check. Plaintiff sees this as a final petty insult from T&C.

242. As a direct result of Defendants' actions, Plaintiff Marina Morgado was denied the timely payment of her final wages from the Defendants.

## EIGHTH CLAIM FOR RELIEF
## VIOLATIONS OF PERSONNEL FILE STATUTE

243. The Plaintiff repeats and realleges the proceeding paragraphs as if fully set forth in this count.

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

28

244. Plaintiff Marina Morgado requested a copy of her personnel file while employed with T&C.

245. Mellor, who served in a management position at T&C, represented to Plaintiff that T&C did not maintain personnel files.

246. The employee handbook for T&C specifically states that T&C maintains personnel files.

247. Following her constructive discharge, Plaintiff retained counsel.

248. Plaintiff's counsel requested a copy of Plaintiff's personnel file.

249. Defendants produced documents located in Plaintiff's desk drawer and represented that said documents comprised Plaintiff's personnel file.

250. Defendants failed to maintain a personnel file for Plaintiff.

251. Defendants failed to produce Plaintiff's personnel file in a timely fashion.

252. By statute, the Plaintiff has sustained damages as a result of the Defendants refusal to provide a timely copy of her personnel file.

## NINTH CLAIM FOR RELIEF
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

253. The Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this count.

254. The Defendants, FST, FAT, AC, T&C, their agents, contractors, employees, and/or persons under their supervision, direction and/or control toremented, harassed, bullied and retaliated against the Plaintiff for the entirety fo her employment with T&C.

255. The Defendants, FST, FAT, AC, T&C, their agents, contractors, employees, and/or persons under their supervision, direction and/or control

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

29

toremented, harassed, bullied and retaliated against the Plaintiff despite her repeated efforts to maintain her employment and work in a professional capacity for T&C.

256. The Defendants, FST, FAT, AC T&C et al., actions are extreme and outrageous due to the egregious nature of their attacks against the Plaintiff.

257. The Defendants actions caused the Plaintiff severe emotional distress, including but not limited to severe anxiety, stomach aches, loss of appetite, headaches, loss of sleep and weight loss.

258. The Plaintiff was damaged as a direct and proximate result of the action of these Defendants, their agents, contractors, employees and/or persons under their supervision, direction and/or control.

## TENTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

259. The Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this count.

260. The Defendants, FST, FAT, AC, T&C, their agents, contractors, employees, and/or persons under their supervision, direction and/or control engaged in a campaign of harassment, torment and bullying against the Plaintiff without legal authorization or permission.

261. The Defendants, FST, FAT, AC, T&C, their agents, contractors, employees, and/or persons under their supervision, direction and/or control engaged in a campaign of harassment, torment and bullying intentionally,

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

30

willfully and with the designed effect to drive Plaintiff from her employment with T&C.

262.    The Defendants actions were extreme and outrageous due to the egregious nature of the campaign of harassment and torment.

263.    The Defendants actions caused the Plaintiff severe emotional distress, including but not limited to severe anxiety, stomach aches, loss of appetite, headaches, loss of sleep and weight loss.

264.    The Plaintiff was damaged and continues to suffer injuries as a direct and proximate result of the action of these Defendants, their agents, contractors, employees and/or persons under their supervision, direction and/or control.

## ELEVENTH CLAIM FOR RELIEF
## VIOLATIONS OF MASSACHUSETTS
## CIVIL RIGHTS ACT (MCRA)

265.    The Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this count.

266.    At all times relative to this complaint, the Plaintiff had a right to petition to seek redress for the wrongs committed against her by the Defendants.

267.    The Defendants, FST, FAT, AC, T&C, their agents, contractors, employees, and/or persons under their supervision, direction and/or control drafted and filed a position statement with the MCAD citing irrelevant material and personal attacks.

268.    The Defendants their agents, contractors and/or employees performed these actions to torment, harass and bully the Plaintiff while she was engaged in constitutionally protected public petitioning activity. The actions of the

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth,MA
02360

31

Defendants, their agents, contractors, employees, and/or persons under their supervision, direction and/or control constitute threats or intimidation that resulted in the attempt to freeze her attempt at petitioning activity.

269.    Defendants are directly and/or vicariously liable for the actions of their agents, contractors, employees and/or persons under their supervision, direction and/or control.

270.    Defendants, their agents, contractors, employees, and/or persons under their supervision, direction and/or control acted with gross disregard for the Plaintiff's civil rights.

271.    The Plaintiff was damaged as a direct and proximate result of the actions of the Defendants their agents, contractors, employees, and/or persons under their supervision, direction and/or control.

## TWELFTH CLAIM FOR RELIEF
## VIOLATION OF 42 USC §1983

272.    The Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this count.

273.    Defendant, F. Steven Triffletti, was a duly elected town moderator for the Town of Plymouth.

274.    While acting in his capacity as a town moderator, the Defendant, F. Steven Triffletti acted under the color of state law.

275.    While acting in his capacity as town moderator, the Defendant F. Steven Triffletti deprived the Plaintiff of rights guaranteed to her by the United States Constitution.

276.    The Plaintiff was damaged as a direct and proximate result of the actions of the Defendants their agents, contractors, employees, and/or persons under their supervision, direction and/or control.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Marina Morgado, demands judgment and damages against the Defendants, F. Steven Trifflett, Esq., Franklin Ashley Triffletti, Esq., Allan J. Costa, Esq. and Triffletti & Costa P.C., with interest, costs and such other relief as determined by this Honorable Court.

## JURY CLAIM

Plaintiff Demands trial by jury on all issues in the within action.

Respectfully Submitted,
MARINA MORGADO,
By Her Attorney,

Ryan J. Matthews, Esq.
115 Sandwich Street, Second Floor
Plymouth, MA 02360
Tel: (508) 747-0700
Fax: (508) 747-3335
BBO No.: 654798
Ryan@RyanJMatthews.com

Dated: October 9, 2024

Law Office of
Ryan J. Matthews
115 Sandwich St.
Plymouth, MA
02360

33

THE COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
One Ashburton Place, Boston, MA 02108
Phone:  (617) 994-6000 Fax:  (617) 994-6024

## - DISMISSAL -

| To: Marina T. Morgado<br>333 South Precinct Street<br>East Taunton, MA 02718 | **Case:** Marina T. Morgado v. Triffletti & Costa, P.C., F. Steven Triffletti, Franklin Ashley Triffletti, Allan J. Costa<br>**MCAD Docket Number:** 24NEM01582<br>**EEOC/HUD Number:** 16C-2024-01957<br>**Investigator:** David Gottschalk |
|---|---|

Your complaint has been dismissed as follows:

[ ]    Pursuant to 804 CMR 1.08(1)(a) (2020), the Commission accords substantial weight to the findings or resolution of the complaint by another forum and has decided to close the investigation accordingly.

[X]    Pursuant to 804 CMR 1.08(1)(b) (2020), the complaint is dismissed after being withdrawn pursuant to 804 CMR 1.04(12) (2020). You are required to file a copy of a complaint filed in court after withdrawal from the Commission with the Commission's Office of the General Counsel pursuant to 804 CMR 1.04(13) (2020).

[ ]    Pursuant to 804 CMR 1.08(1)(d) (2020), the complaint is administratively dismissed due to:

> [ ] bankruptcy of a party
> [ ] death of a party
> [ ] inability to locate a party after providing the party 30 days in which to respond to a notice sent to the party's last known address
> [ ] adjudication by another forum
> [ ] unreasonable refusal by complainant to cooperate with processing the case
> [ ] failure to participate
> [ ] refusal to accept a reasonable settlement offer
> [ ] other:

[ ]    Pursuant to 804 CMR 1.08(1)(e) (2020), the parties have settled the case.

[ ]    Pursuant to 804 CMR 1.08(4)(a)(5) (2020), the Commission has entered an order reversing a probable cause determination.

**Please note that further administrative or judicial review of the dismissal of your complaint is unavailable.**

August 27, 2024

_Monserrate Rodriguez Colón_

Monserrate Rodríguez Colón          Date
Investigating Commissioner

MCAD Docket Number 24NEM01582, Dismissal without Right to Appeal

THE COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
One Ashburton Place, Boston, MA 02108
Phone:  (617) 994-6000 Fax: (617) 994-6024

Cc: Jessica Deratzian, Esq.
Halaby Law Group, P.C.
14 Main Street
Hingham, MA 02043

Julie A. Halaby, Esq.
Halaby Law Group, P.C.
14 Main Street
Hingham, MA 02043

MCAD Docket Number 24NEM01582, Dismissal without Right to Appeal

# TRIFFLETTI & COSTA, P.C.

### COUNSELLORS AT LAW

*Courtyard Place*
*124 Long Pond Road*
*Suite 20*
*Plymouth, MA 02360-2643*
*(508) 746-1464*
*FAX (508) 746-9205*
*e-mail: triff@plymouthlaw.com*

F. Steven Triffletti                    Allan J. Costa                    Franklin A. Triffletti

November 3, 2020

Marina Tavares-Morgado
333 South Precinct Street
East Taunton, MA 02718

Dear Marina:

Triffletti and Costa, P.C. is pleased to welcome you as part our team to your position as Paralegal.

As discussed, your start date will be November 30, 2020. This is a Full Time - 40 Hour per week position. The starting hourly rate is $29.00 per hour and is paid on a bi-weekly basis. Direct Deposit is available.

There is a 90-day probationary period, during which time no benefits will be administered. A review will be conducted on your 91st day of employment.

Triffletti & Costa P.C. offers Medical, Life and Dental Benefits which are available after your 90-day probationary period. We also offer a company sponsored IRA which is available after 1 year of employment.

Triffletti & Costa P.C. offers a flexible paid time off plan which includes vacation, sick leave and paid holidays. Vacation time accrues at the rate of 2.5 days per quarter. 5 sick days are given on January 1st of every calendar year. On your 91st day of employment through December 31, 2021, you will receive 8 prorated vacation days. Beginning January 1, 2022, you will be entitled to 10 paid vacation days per calendar year. A schedule of paid Holidays will be provided to you.

Sincerely,

Brianna M Mellor
Controller

ß

Fw: **TRIFFLETTI INTERVIEW CONFIRMATION**

On Tuesday, November 17, 2020, 9:48 AM, Simonetti, Danielle (02100) <danielle.simonetti@roberthalflegal.com> wrote:

Hi Marina,

Please see below for Brianna's answers 😊

**Danielle A. Simonetti, Esq.**  Book a meeting with me
Recruiting Manager
617.204.9100
617.261.1436 fax
Danielle.simonetti@roberthalflegal.com

**Robert Half Legal**

| 125 High Street | 17th Floor | Boston | MA 02110 USA |
Connect with us: LinkedIn | Facebook | Twitter | YouTube | Blog



Hi Danielle,

I hope you did as well!

I can definitely work with her and offer her the health insurance after 30 days. Although It is our policy and every employee has adhered to the timeframe. I am willing to make this exception as I am eager to have her start. As you know in the HR world you cannot do for one and not do for all, it opens us up for issues. Please let her know that this information is not to be shared.

Marina's first pay check will be on 12/11/20 and every other Friday thereafter. It will be for a full two weeks' pay.

Best,

, Brianna

, Brianna M. Mellor

*Controller*

*Triffletti & Costa PC*

*Triff Realty Trust*

*124 Long Pond Road*

*Plymouth MA 02360*

*p:508.746.1464*

*F:508.746.9205*

www.plymouthlaw.com

**\*Important Notice:**

Triffletti & Costa, PC continues to monitor developments around COVID-19 and recognizes that some of our clients may be affected by the global pandemic. As always, our primary focus is the safety of our clients, employees and the communities we serve. Internally, our firm is taking necessary steps to ensure the well-being of our clients and employees and prevent any potential legal service disruptions, including providing remote access capabilities and continuity plans for servicing our clients.

Wishing you all the best during this difficult time. Be safe & stay healthy.

My job includes exceptional client service. If you would like to comment on the service you have received, please email your feedback to trif@plymouthlaw.com.

**This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs. 2510-2521 and is legally privileged.**

about:blank

2/3

The information contained in this email is confidential and protected by Attorney/Client and/or Attorney/Work Product Privileges. It is intended solely for the use and view of the intended Addressee and the Privileges are not waived by virtue of this having been sent by email. If the person actually receiving this transmission or any other reader of these documents is not the named recipient, the employee or the agent of said recipient authorized to read these documents, be advised that, any use, dissemination, distribution or copying of this communication is strictly prohibited.

If you are not the intended recipient and you have received this email in error, please reply to us or notify us immediately by telephone at 508-746-1464 and destroy or delete this communication and related documents immediately.

Thank You.

# Triffletti & Costa P.C.

**Employee Handbook**

Triffletti & Costa P.C.
Employee Handbook

# Table of Contents

**Section 1 - Introduction**

1.1 Welcome
1.2 Employee Handbook
1.3 Changes in Policy
1.4 Employment-At-Will

**Section 2 - Employment Policies**

2.1 Employee Classifications
2.2 Equal Employment Opportunity & Americans with Disabilities Act.
2.3 Confidentiality
2.4 Employment of Minors
2.5 Employment of Relatives
2.6 Introductory Period
2.7 Personnel Records and Employee References
2.8 Privacy
2.9 Immigration Law Compliance
2.10 Political Neutrality

**Section 3 - Hours of Work and Payroll Practices**

3.1 Pay Periods and Paydays
3.2 Overtime
3.3 Rest and Meal Periods
3.4 Time Cards
3.5 Payroll Deductions
3.6 Wage Garnishment
3.7 Direct Deposit

**Section 4 - Standards of Conduct and Employee Performance**

4.1 Anti- Harassment and Discrimination
4.2 Attendance
4.3 Discipline and Standards of Conduct
4.4 Dress Code
4.5 Safety
4.6 Substance and Abuse
4.7 Internet, Email and Computer Use Policy
4.8 Social Media Policy

4.9 Cell Phone Policy

## Section 5 - Employee Benefits and Services

5.1 Generally
5.2 Group Health Insurance
5.3 Group Life Insurance
5.4 IRA Plan
5.5 COBRA
5.6 Worker's Compensation
5.7 Social Security Benefits (FICA)
5.8 Unemployment Insurance

## Section 6 - Employee Leaves of Absence and Time Off

6.1 Generally
6.2 Sick Days
6.3 Vacation Days
6.4 Holidays
6.5 Family and Medical Leave
6.6 Workers' Compensation Leave
6.7 Bereavement Leave
6.8 Jury Duty
6.9 Voting Time

# Section 1
# Introduction

## 1.1 Welcome to Triffletti & Costa P.C.

Welcome! You have just joined a dedicated organization. We hope that your employment with Triffletti & Costa P.C. will be rewarding and challenging. We take pride in our associates, as well as, in the services we provide. Please take the time now to read this handbook carefully. Sign the acknowledgment at the end to show that you have read, understood, and agree to the contents of this handbook, which sets out the basic rules and guidelines concerning your employment. This handbook supersedes any previously issued handbooks or policy statements dealing with the subjects discussed herein. The Company reserves the right to interpret, modify, or supplement the provisions of this handbook at any time. Neither this handbook nor any other communication by a management representative or other, whether oral or written, is intended in any way to create a contract of employment. Please understand that no employee handbook can address every situation in the work place. If you have questions about your employment or any provisions in this handbook, please contact Brianna M Mellor. We wish you success in your employment here at Triffletti & Costa P.C.

## 1.2 Employee Handbook

This Employee Handbook ("Handbook") is designed to summarize certain personnel policies and benefits of Triffletti & Costa P.C. (the "Company"), of 124 Long Pond Road, Plymouth, Massachusetts 02360, and to acquaint employees with many of the rules concerning employment with the Company. This Handbook applies to all employees, and compliance with the Company's policies is a condition of employment. This Handbook supersedes all previous employment policies, written and oral, express and implied. The Company reserves the right to modify, rescind, delete, or add to the provisions of this Handbook from time to time in its sole and absolute discretion. This Employee Handbook is not a binding contract between the Company and its employees, nor is it intended to alter the at-will employment relationship between the Company and its employees. The Company reserves the right to interpret the policies in this Handbook and to deviate from them when, in its discretion, it determines it is appropriate.

## 1.3 Changes in Policy

Since our business is constantly changing, the Company expressly reserves the right to revise, modify, delete, or add to any and all policies, procedures, work rules, or benefits stated in this handbook or in any other document, except for the policy of at-will employment as described below. No oral statements or representations can in any way alter the provisions of this Handbook. Nothing in this employee handbook or in any other document, including benefit plan descriptions, creates or is intended to create a promise or representation of continued employment for any employee. Any changes to your at-will employment status, described below, must be in writing and must be signed by the Company.

If you are uncertain about any policy or procedure, please check with Brianna M. Mellor.

## 1.4 Employment-At-Will

Employment with the Company is on an at-will basis, unless otherwise specified in a written employment agreement. You are free to resign at any time, for any reason, with or without notice. Similarly, the Company is free to conclude the employment relationship at any time for any lawful reason, with or without cause, and with or without notice.

Nothing in this Handbook will limit the right of either party to terminate an at-will employment. No section of this Handbook is meant to be construed, nor should be construed, as establishing anything other than an employment-at-will relationship. This Handbook does not limit management's discretion to make personnel decisions such as reassignment, change of wages and benefits, demotion, etc. No person other than the President or Controller has the authority to enter into an agreement for employment for any specified period of time or to make an agreement for employment other than at-will terms. Only the President or Controller of the Company has the authority to make any such agreement, which is only binding if it is in writing and signed by the President of the Company.

# Section 2
# Employment Policies

## 2.1 Employee Classifications

The following terms are used to describe employees and their employment status:

**Exempt Employees** - Employees whose positions meet specific tests established by the Federal Labor Standards Act ("FLSA") and Massachusetts state law. In general, exempt employees are those engaged in executive, managerial, high-level administrative and professional jobs who are paid a fixed salary and perform certain duties. In addition, certain commissioned sales employees and highly paid computer professionals are exempt. Exempt employees are not subject to the minimum wage and overtime laws.

**Nonexempt Employees** - Employees whose positions do not meet specific tests established by the FLSA and Massachusetts state law. All employees who are covered by the federal or state minimum wage and overtime laws are considered nonexempt. Employees working in nonexempt jobs are entitled to be paid at least the minimum wage per hour and a premium for overtime.

**Full-Time Employees** - Employees who are not temporary employees, independent contractors, or independent consultants and who are regularly scheduled to work a schedule of 40 hours per work week.

**Part-Time Employees** - **Employees** who are not temporary employees, independent contractors, or independent consultants and who are regularly scheduled to work less than 40 hours per work week.

**Temporary Employees** - Employees who are hired as interim replacements to temporarily supplement the workforce or to assist in the completion of a specific project. Employment assignments in this category are of limited duration and the temporary employee can be let go before the end of the defined period. Short term assignments generally are periods of three (3) months or less, however, such assignments may be extended. All Temporary employees are at-will regardless of the anticipated duration of the assignment (see Employment-at-Will Policy). Temporary employees retain that status unless and until notified in writing of a change.

**Independent Contractor or Consultant** - These individuals are not employees of the Company and are self-employed. An independent contractor or consultant is engaged to perform a task according to his/her own methods and is subject to control and direction only as to the results to be accomplished. Independent contractors or consultants are not entitled to benefits.

Each employee will be advised of his or her status at the time of hire and any change in status. Regardless of the employee's status, the employee is employed at-will and the employment relationship can be terminated by the Company or the employee at any time, with or without cause and with or without notice.

## 2.2 Equal Employment Opportunity & Americans with Disabilities Act

It is the policy of the Company to provide equal employment opportunities to all employees and employment applicants without regard to unlawful considerations of race, religion, creed, color, national origin, sex, pregnancy, sexual orientation, gender identity, age, ancestry, physical or mental disability, genetic information, marital status or any other classification protected by applicable local, state or federal laws. This policy prohibits unlawful discrimination based on the perception that anyone has any of those characteristics, or is associated with a person who has or is perceived as having any of those characteristics. This policy applies to all aspects of employment, including, but not limited to, hiring, job assignment, working conditions, compensation, promotion, benefits, scheduling, training, discipline and termination.

The Company expects all employees to support our equal employment opportunity policy, and to take all steps necessary to maintain a workplace free from unlawful discrimination and harassment and to accommodate others in line with this policy to the fullest extent required by law. For example, the Company will make reasonable accommodations for employees' observance of religious holidays and practices unless the accommodation would cause an undue hardship on the Company's operations. If you desire a religious accommodation, you are required to make the request in writing to the Controller as far in advance as possible. You are expected to strive to find co-workers who can assist in the accommodation and cooperate with the Company in seeking and evaluating alternatives.

Moreover, in compliance with the Americans with Disabilities Act (ADA), the Company provides reasonable accommodations to qualified individuals with disabilities to the fullest extent required by law. The Company may require medical certification of both the disability and the need for accommodation. Keep in mind that the Company can only seek to accommodate the known physical or mental limitations of an otherwise qualified individual. Therefore, it is your responsibility to come forward if you are in need of an accommodation. The Company will engage in an interactive process with the employee to identify possible accommodations, if any will help the applicant or employee perform the job.

**2.3 Confidentiality**

In the course of employment with the Company, employees may have access to "Confidential Information" regarding the Company, which may include its business strategy, future plans, financial information, contracts, suppliers, customers, personnel information or other information that the Company considers proprietary and confidential. Maintaining the confidentiality of this information is vital to the Company's competitive position in the industry and, ultimately, to its ability to achieve financial success and stability. Employees must protect this information by safeguarding it when in use, using it only for the business of the Company and disclosing it only when authorized to do so and to those who have a legitimate business need to know about it. This duty of confidentiality applies whether the employee is on or off the Company's premises, and during and even after the end of the employee's employment with the Company. This duty of confidentiality also applies to communications transmitted by the Company's electronic communications. See also Internet, Email and Computer Use policy, herein.

As a condition of employment with the Company, all employees must sign a Non-Disclosure Agreement subject to Rule 1.6: Confidentiality of Information (Client and Lawyer Confidentiality) and Rule 5.3: Responsibilities of Non-Lawyer Assistants. A copy of both Rules will be provided to Employees or found on the American Bar Association Website.

**2.4 Employment of Minors**

The FLSA's child labor provisions, which the Company strictly adheres to, are designed to protect the educational opportunities of youth and prohibit their employment in jobs that are detrimental to their health and safety. Generally speaking, the FLSA sets the minimum age for employment (14 years for non-agricultural jobs), restricts the hours youth under the age of 16 may work, and prohibits youth under the age of 18 from being employed in hazardous occupations. In addition, the FLSA establishes subminimum wage standards for certain employees who are less than 20 years of age, full-time students, student learners, apprentices, and workers with disabilities. Employers generally must have authorization from the U.S. Department of Labor's Wage and Hour Division (WHD) in order to pay sub-minimum wage rates.

**2.5 Employment of Relatives**

The Company recognizes that the employment of relatives in certain circumstances, such as when they will work in the same department, supervise or manage the other, or have access to confidential or sensitive information regarding the other, can cause problems related to supervision,

safety, security or morale, or create conflicts of interest that materially and substantially disrupt the Company's operations. When the Company determines any of these problems will be present, it will decline to hire an individual to work in the same department as a relative. Relatives subject to this policy include: father, mother, sister, brother, current spouse or domestic partner, child (natural, foster, or adopted), current mother-in- law, current father-in-law, grandparent, or grandchild.

If present employees become relatives during employment, the Company should be notified so that we may determine whether a problem involving supervision, safety, security or morale, or a conflict of interest that would materially and substantially disrupt the Company's operations exists. If the Company determines that such a problem exists, the Company will take appropriate steps to resolve the problem, which may include reassignment of one relative (if feasible) or asking for the resignation of one of the relatives.

## 2.6 Introductory Period

The first 90 days of employment are considered an introductory period for all newly hired employees. During this time, you will learn your new responsibilities, get acquainted with fellow employees, and determine whether you are happy with the position. Also, during this time, your manager will monitor your performance. Upon completion of the introductory period, your manager will review your performance. If the Company finds your performance satisfactory and decides to continue your employment, you will be advised of any improvements expected. This is also an opportunity for you to make suggestions to improve the Company's efficiency and operations. Completion of the introductory period does not entitle you to remain employed by the Company for any definite period of time, but instead allows both you and the Company to evaluate whether or not you are right for the position. Your status as an at-will employee does not change- the employment relationship may be terminated with or without cause and with or without advance notice, at any time by you or the Company.

## 2.7 Personnel Records and Employee References

The Company maintains a personnel file and payroll records for each employee as required by law. Personnel files and payroll records are the property of the Company and may not be removed from Company premises without written authorization. Because personnel files and payroll records are confidential, access to the records is restricted. Generally, only those who have a legitimate reason to review information in an employee's file are allowed to do so. Disclosure of personnel information to outside sources will be limited. However, the Company will cooperate with requests from authorized law enforcement or local, state, or federal agencies conducting official investigations and as otherwise legally required.

Employees may contact a Human Resources representative to request a time to review their payroll records and/or personnel file. With reasonable advance notice, an employee may review his or her own records in the Company's offices during regular business hours and in the presence of an individual appointed by the Company to maintain the records. You also have the right to obtain a copy of your personnel files, but you may be required to pay for any such copies. You

may add your comments to any disputed item in the file.

By policy, the Company will provide only the former or present employee's dates of employment and position(s) held with the Company. Compensation information may also be verified if written authorization is provided by the employee.

## 2.8 Privacy

The Company is respectful of employee privacy. All employee demographic and personal information will be shared only as required in the normal course of business. Healthcare enrollment information is kept in a separate folder from other human resources forms. Workers' Compensation information is not considered private healthcare information; however, this information will be released only on a need-to-know basis.

The Company does not make or receive any private healthcare information through the course of normal work. If any employee voluntarily shares private healthcare information with a member of management, this information will be kept confidential. If applicable, the Company will set up guidelines for employees and management to follow to ensure that company employees conform to the requirements of the Health Insurance Portability and Accountability Act (HIPAA).

## 2.9 Immigration Law Compliance

In compliance with the Immigration Reform and Control Act of 1986, each new employee, as a condition of employment, must complete the Employment Eligibility Verification Form I-9 on the date of hire and present documentation establishing identity and employment eligibility within three business days of date of hire. Former employees who are rehired must also complete an I-9 form if they have not completed an I-9 form with the Company within the past three years, or if their previous I-9 form is no longer retained or valid. You may raise questions or complaints about immigration law compliance without fear of reprisal.

## 2.10 Political Neutrality

Maintenance of individual freedom and our political institutions necessitates broad scale participation by citizens concerning the selection, nomination and election of our public office holders. The Company will not discriminate against any employee because of identification with and support of any lawful political activity. Company employees are entitled to their own personal political position. The Company will not discriminate against employees based on their lawful political activity engaged in outside of work. If you are engaging in political activity, however, you should always make it clear that your actions and opinions are your own and not necessarily those of the Company, and that you are not representing the Company.

## Section 3
## Hours of Work and Payroll Practices

### 3.1 Pay Periods and Paydays

Employees are paid on a bi-weekly basis. All employees will be paid every other Friday. All employees are paid by check or direct deposit on the above-mentioned payday.

### 3.2 Overtime

Nonexempt employees will be paid in accordance with federal and Massachusetts state law.

In Massachusetts, with many exceptions, the standard work week for employees should not exceed 40 hours per week. Should the Company find it necessary to employ an employee in excess of this standard, overtime hours shall be compensated at the rate of one and one-half times the regular rate of pay.

All overtime work by non-exempt employees must be authorized in advance by their manager. Only hours actually worked will be used to calculate overtime pay.

### 3.3 Rest and Meal Periods

All rest and meal periods will be in accordance with Massachusetts state law.

Nonexempt employees scheduled to work more than a six hour period will be provided a 30-minute unpaid meal period.

### 3.4 Time Cards

Nonexempt employees are required to keep an accurate and complete record of their attendance and hours worked. Time cards are official business records and may not be altered without the employee's supervisor's approval and may not be falsified in any way.

### 3.5 Payroll Deductions

Various payroll deductions are made each payday to comply with federal and state laws pertaining to taxes and insurance. Deductions will be made for the following: Federal and State Income Tax Withholding, Social Security, Medicare, State Disability Insurance & Family Temporary Disability Insurance, and other items designated by you or required by law (including a valid court order). You can adjust your federal and state income tax withholding by completing the proper federal or state form and submitting it to Human Resources. At the start of each calendar year, you will be supplied with your Wage and Tax Statement (W-2) form for the prior year. This statement summarizes your income and deductions for the year.

## 3.6 Wage Garnishment

A garnishment is a court order requiring an employer to remit part of an employee's wages to a

third party to satisfy a just debt. Once the Company receives the legal papers ordering a garnishment, we are required by law to continue making deductions from your check until we have withheld the full amount or until we receive legal papers from the court to stop the garnishment. Even if you have already paid the debt, we still need the legal papers to stop the garnishment.

## 3.7 Direct Deposit

All employees are encouraged, but not required, to use direct deposit and have their paychecks deposited into a bank account of an accredited participating bank or credit union.

# Section 4
# Standards of Conduct and Employee Performance

## 4.1 Anti- Harassment and Discrimination

The Company is committed to providing a work environment free of sexual or any form of unlawful harassment or discrimination. Harassment or unlawful discrimination against individuals on the basis of race, religion, creed, color, national origin, sex, pregnancy, sexual orientation, gender identity, age, ancestry, physical or mental disability, genetic information, marital status or any other classification protected by local, state or federal laws is illegal and prohibited by Company policy. Such conduct by or towards any employee, contract worker, customer, vendor or anyone else who does business with the Company will not be tolerated. Any employee or contract worker who violates this policy will be subject to disciplinary action, up to and including termination of his or her employment or engagement. To the extent a customer, vendor or other person with whom the Company does business engages in unlawful harassment or discrimination, the Company will take appropriate corrective action.

## Prohibited Conduct:

Prohibited harassment or discrimination includes any verbal, physical or visual conduct based on sex, race, age, national origin, disability or any other legally protected basis if:

   a. submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or engagement;

   b. submission to or rejection of such conduct by an individual is used as a basis for decisions concerning that individual's employment or engagement; or

   c. it creates a hostile or offensive work environment.

Prohibited harassment includes (but is not limited to) unwelcome sexual advances, requests for sexual favors and lewd, vulgar or obscene remarks, jokes, posters or cartoons, and any unwelcome touching, pinching or other physical contact. Other forms of unlawful harassment or discrimination may include racial epithets, slurs and derogatory remarks, stereotypes, jokes,

posters or cartoons based on race, national origin, age, disability, marital status or other legally protected categories. Prohibited harassment might also be transmitted using the Company's electronic communications system, or through other on-line conduct.

**Complaint Procedure:**

Employees or contract workers who feel that they have been harassed or discriminated against, or who witness any harassment or discrimination by an employee, contract worker, customer, vendor or anyone else who does business with the Company, should immediately report such conduct to their supervisor or any other member of management.

Do not allow an inappropriate situation to continue by not reporting it, regardless of who is creating the situation. No employee, contract worker, customer, vendor or other person who does business with this organization is exempt from the prohibitions in this policy. In response to every complaint, the Company will conduct an investigation which may involve interviewing witnesses if warranted and, if improper conduct is found, take appropriate corrective action.

To the extent that an employee or contract worker is not satisfied with the Company's handling of a harassment or discrimination complaint, he or she may also contact the appropriate state or federal enforcement agency for legal relief.

## 4.2 Attendance

Punctuality and regular attendance are essential to the successful operation of the Company's business. If an employee is unable to report to work (or to report to work on time) for any reason, the employee must notify a member of management before his or her starting time. If an employee desires to leave work for any reason during the workday, the employee must obtain the approval of his or her supervisor prior to leaving. Excessive absenteeism or tardiness may subject the employee to disciplinary action, up to and including termination.

## 4.3 Discipline and Standards of Conduct

As an at-will employer, the Company may impose discipline whenever it determines it is necessary or appropriate. Discipline may take various forms, including verbal counseling, written warnings, suspension, demotion, transfer, reassignment or termination. The discipline imposed will depend on the circumstances of each case; therefore, discipline will not necessarily be imposed in any particular sequence. Moreover, at any time the Company determines it is appropriate, an employee may be terminated immediately.

Every organization must have certain standards of conduct to guide the behavior of employees. Although there is no possible way to identify every rule of conduct, the following is an illustrative list (not intended to be comprehensive or to limit the Company's right to impose discipline for any other conduct it deems inappropriate). Keep in mind that these standards of conduct apply to all employees whenever they are on Company property and/or conducting Company business (on or off Company property). Engaging in any conduct the Company deems inappropriate may result in disciplinary action, up to and including termination.

a. Dishonesty;

b. Falsification of Company records;

c. Unauthorized use or possession of property that belongs to the Company, a coworker, or of the public;

d. Possession or control of illegal drugs, weapons, explosives, or other dangerous or unauthorized materials;

e. Fighting, engaging in threats of violence or violence, use of vulgar or abusive language, horseplay, practical jokes or other disorderly conduct that may endanger others or damage property;

f. Insubordination, failure to perform assigned duties or failure to comply with the Company's health, safety or other rules;

g. Unauthorized or careless use of the Company's materials, equipment or property;

h. Unauthorized and/or excessive absenteeism or tardiness;

i. Lack of teamwork, poor communication, unsatisfactory performance, unprofessional conduct, or conduct improper for the workplace;

j. Sexual or other illegal harassment or discrimination;

k. Unauthorized use or disclosure of the Company's confidential information;

l. Violation of any Company policy.

## 4.4 Dress Code

What we wear to work is a reflection of the pride we have in our Company, in what we do, and in ourselves. We ask that your appearance at all times show discretion, good taste, and appropriateness for the safe performance of your job.

## 4.5 Safety

The Company is committed to providing a safe workplace. Accordingly, the Company emphasizes "safety first." It is the employee's responsibility to take steps to promote safety in the workplace and work in a safe manner. By remaining safety conscious, employees can protect themselves and their coworkers. Employees are expected to promptly report all unsafe working conditions, accidents and injuries, regardless of how minor so that any potential hazards can be corrected.

## 4.6 Substance and Abuse

The Company is committed to providing its employees with a safe and productive work environment. In keeping with this commitment, it maintains a strict policy against the use of alcohol and the unlawful use of drugs in the workplace. Consequently, no employee may consume or possess alcohol, or use, possess, sell, purchase or transfer illegal drugs at any time while on the Company's premises or while using the Company vehicles or equipment, or at any location during work time.

No employee may report to work with illegal drugs (or their metabolites) or alcohol in his or her bodily system. The only exception to this rule is that employees may engage in moderate consumption of alcohol that may be served and/or consumed as part of an authorized Company social or business event. "Illegal drug" means any drug that is not legally obtainable or that is legally obtainable but has not been legally obtained. It includes prescription drugs not being used for prescribed purposes or by the person to whom it is prescribed or in prescribed amounts. It also includes any substance a person holds out to another as an illegal drug.

Any violation of this policy will result in disciplinary action, up to and including termination.

Any employee who feels he or she has developed an addiction to, dependence upon, or problem with alcohol or drugs, legal or illegal, is strongly encouraged to seek assistance before a violation of this policy occurs. Any employee who requests time off to participate in a rehabilitation program will be reasonably accommodated. However, employees may not avoid disciplinary action, up to and including termination, by entering a rehabilitation program after a violation of this policy is suspected or discovered.

## 4.7 Internet, Email and Computer Use Policy

The Company uses various forms of electronic communication including, but not limited to: computers, email, telephones, voicemail, instant message, text message, Internet, cell phones and smart phones (hereafter referred to as "electronic communications"). The electronic communications, including all software, databases, hardware, and digital files, remain the sole property of the Company and are to be used only for Company business and not for personal use.

The following rules apply to all forms of electronic communications and media that are: (1) accessed on or from Company premises; (2) accessed using the Company computer or telecommunications equipment, or via Company-paid access methods; and/or (3) used in a manner which identifies the Company. The following list is not exhaustive and the Company may implement additional rules from time to time.

a. Electronic communication and media may not be used in any manner that would be discriminatory, harassing, or obscene, or for any other purpose that is illegal, against Company policy, or not in the best interest of the Company. Employees who misuse electronic communications and engage in defamation, copyright or trademark infringement, misappropriation of trade secrets, discrimination, harassment, or related actions will be subject to discipline, up to and including termination. Employees may not install personal software on Company computer systems.

b. Employee's own electronic media may only be used during breaks. All other company policies, including the Company's no tolerance for discrimination, harassment, or retaliation in the workplace apply.

c. All electronic information created by any employee on Company premises or transmitted to Company property using any means of electronic communication is the property of the Company and remains the property of the Company. You should not assume that any electronic communications are private or confidential and should transmit personal sensitive information in other ways. Personal passwords may be used for purposes of security, but the use of a personal password does not affect the Company's ownership of the electronic information. The Company will override all personal passwords if necessary for any reason.

d. The Company reserves the right to access and review electronic files, messages, internet use, blogs, "tweets", instant messages, text messages, email, voice mail, and other digital archives, and to monitor the use of electronic communications as necessary to ensure that no misuse or violation of Company policy or any law occurs. All such information may be used and/or disclosed to others, in accordance with business needs and the law. The Company reserves the right to keep a record of all passwords and codes used and/or may be able to override any such password system.

e.  Employees are not permitted to access the electronic communications of other employees or third parties unless directed to do so by Company management. No employee may install or use anonymous e-mail transmission programs or encryption of e-mail communications.

f.  Employees who use devices on which information may be received and/or stored, including but not limited to cell phones, cordless phones, portable computers, fax machines, and voice mail communications are required to use these methods in strict compliance with the Confidentiality section of this Handbook. These communications tools should not be used for communicating confidential or sensitive information or any trade secrets.

g.  Access to the Internet, websites, and other types of Company-paid computer access are to be used for Company-related business only. Any information about Triffletti & Costa P.C., its products or services, or other types of information that will appear in the electronic media about the Company must be approved before the information is placed on any electronic information resource that is accessible to others.

## 4.8 Social Media Policy

Triffletti & Costa P.C. is committed to utilizing social media to enhance its profile and reputation, to listen and respond to customer opinions and feedback, and to drive revenue, loyalty and advocacy. We encourage employees to support our activities through their personal social networking channels while adhering to the guidelines outlined in this section.

For the purpose of this section, social media and networking refers to the use of web-based and mobile applications for social interaction and the exchange of user-generated content. Social media channels can include, but are not limited to: Facebook, Twitter, LinkedIn, YouTube, blogs, review sites, forums, online communities and any similar online platforms.

Employees are expected to conduct themselves in a professional manner and to respect the views and opinions of others. The Company and its employees are committed to conducting ourselves in accordance with best industry practices in social networking, to being responsible citizens and community members, to listening and responding to feedback, and to communicating in a courteous and professional manner. Behavior and content that may be deemed disrespectful, dishonest, offensive, harassing or damaging to the company's interests or reputation are not permitted. The use of social media channels on company time for personal purposes is not allowed.

Any social media contacts, including "followers" or "friends," that are acquired through accounts (including but not limited to email addresses, blogs, Twitter, Facebook, YouTube, LinkedIn, or other social media networks) created on behalf of the Company will be the property of the Company.

Employees must not disclose private or confidential information about the Company, its employees, clients, suppliers or customers on social networks. Employees must respect trademarks, copyrights, intellectual property and proprietary information. No third-party content should be published without prior permission from the owner.

The Company maintains the right to monitor company-related employee activity in social networks. Violation of policy guidelines is grounds for discipline, up to and including termination.

### 4.9 Cell Phone Policy

The use of personal cell phones at work is discouraged because it can interfere with work and be disruptive to others. Therefore, employees who bring personal cell phones to work are required to keep the ringer shut off or placed on vibrate mode when they are in the office, and to keep cell phone use confined to breaks and meal periods. Conversations should be had away from areas where other employees are working. When cell phone use interferes with the satisfactory performance of an employee's duties or disturbs others, the privilege of using a personal cell phone at work may be taken away and other disciplinary action, up to and including termination, may be imposed.

# Section 5
# Employee Benefits and Services

## 5.1 General

Aside from those benefits required by state and federal regulations, Triffletti & Costa P.C. also offers additional benefits for its full-time employees. From time to time, benefits may be added or deleted from the benefits package. The Company reserves the right to make such changes.

This Handbook does not contain the complete terms and/or conditions of any of the Company's current benefit plans. It is intended only to provide general explanations. For information regarding employee benefits and services, employees should contact Brianna M Mellor.

## 5.2 Group Health Insurance

Triffletti & Costa P.C. offers a group health plan for eligible employees. The Company's group health insurance plan is offered through Blue Cross Blue Shield of MA. For more information, employees should contact Brianna M Mellor.

## 5.3 Group Life Insurance

Triffletti & Costa P.C. offers a group life insurance plan for eligible employees. The Company's group life insurance plan is offered through SunLife. For more information, employees should contact Brianna M Mellor.

## 5.4 IRA Plan

Triffletti & Costa P.C.'s IRA Plan is a convenient payroll deductible method to help supplement employees' retirement benefits and provide a long term vehicle to accumulate savings. For information regarding employee benefits and services, employees should contact Brianna M Mellor.

## 5.5 COBRA

Under the provisions of the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1986, if you are covered under the Company's group health insurance plan(s) you are entitled to continue your coverage in the event that your employment with the Company ends. Under COBRA, the Company must offer each qualified beneficiary (the employee and any covered dependents) who would otherwise lose coverage under the plan as a result of a qualifying event an opportunity to continue their insurance coverage. A qualifying event is defined as termination of employment, a reduction in the number of hours of employment, death of covered employee, divorce or legal separation, a dependent child ceases to be dependent, eligibility of the covered employee for Medicare, or an employer's bankruptcy.

## 5.6 Workers' Compensation

All states have Workers' Compensation laws whose purpose is to promote the general welfare of people by providing compensation for accidental injuries or death suffered in the course of employment. These laws are designed to provide protection to workers suffering occupational disabilities through accidents arising out of, and in the course of employment. Triffletti & Costa P.C. carries Workers' Compensation Insurance for all employees and pays the entire cost of the insurance program. An employee who suffers an injury or illness in connection with the job is usually eligible to receive payment through the insurance company for lost wages. In addition to disability payments, necessary hospital, medical and surgical expenses are covered under Workers' Compensation, with payments being made directly to the hospital or physician. Workers' Compensation benefits to injured workers also include assistance to help qualified injured employees return to suitable employment.

## 5.7 Social Security Benefits (FICA)

During your employment, you and the Company both contribute funds to the Federal government to support the Social Security Program. This program is intended to provide you with retirement benefit payments and medical coverage once you reach retirement age.

## 5.8 Unemployment Insurance

The company pays a state and federal tax to provide employees with unemployment insurance coverage in the event they become unemployed through no fault of their own or due to circumstances described by law. This insurance is administered by applicable state agencies, who determine eligibility for benefits, the amount of benefits (if any), and duration of benefits.

# Section 6
# Employee Leaves of Absence and Time Off

## 6.1 General

While regular attendance is crucial to maintain business operations, the Company recognizes that, for a variety of reasons, employees may need time off from work. The Company has available a number of types of leaves of absence. Some are governed by law and others are discretionary. For all planned leaves, however, employees must submit a request at least 30 days in advance; in case of emergencies, employees should submit the request as soon as they become aware of the need for leave. All leaves must have the approval of Company management. If, during a leave, an employee accepts another job, engages in other employment or consulting outside of the Company, or applies for unemployment insurance benefits, the employee may be considered to have voluntarily resigned from employment with the Company.

All requests for a leave of absence will be considered in light of their effect on the Company and its work requirements, as determined by Company management, which reserves the right to approve or deny such requests in its sole discretion, unless otherwise required by law. For disability-related leave requests, the Company will engage in an interactive process with the employee to determine if a leave is the most appropriate accommodation. The employee must provide a certification from his or her health care provider to the Company to support a leave for medical reasons. Failure to provide the required certification to the Company in a timely manner will result in delay or denial of leave. If an employee requires an extension of leave, the employee must request such extension and have it approved before the expiration of the currently approved leave.

While the Company will make a reasonable effort to return the employee to his or her former position or a comparable position following an approved leave of absence, there is no guarantee that the employee will be reinstated to his or her position, or any position, except as required by law.

## 6.2 Sick Days

All employees are entitled to five paid sick days per year calendar.

## 6.3 Vacation Days

Full Time employees are entitled to ten paid vacation days per year. Vacation days' pay for regular full-time employees will be calculated based on the employee's base pay rate times the number of hours the employee would otherwise have worked on that day. When employees eligible for paid vacation days do not take the full amount of vacation time they could have taken in a year,
Up to five vacation days will automatically carry over to the next calendar year. Any prior year carryover vacation time must be used by March 31st. Upon termination, employees will be paid all accrued but unused vacation time as wages. Wages will be calculated based on the employee's base pay rate during the period the vacation time was accrued.

## 6.4 Holidays

Triffletti & Costa P.C. observes the following paid holidays:

- New Year's Day
- Martin Luther King Jr. Day
- President's Day
- Memorial Day
- Independence Day
- Labor Day
- Columbus Day
- Veteran's Day
- Thanksgiving Day
- Christmas Day

The Company will grant paid holiday time off to all Full Time employees. Holiday pay for regular full- time employees will be calculated based on the employee's base pay rate (as of the date of the holiday) times the number of hours the employee would otherwise have worked on that day.

If an eligible non-exempt employee works on a recognized holiday with Company approval, he or she will receive holiday pay plus wages at his or her straight-time rate for the hours worked on the holiday.

### 6.5 Family and Medical Leave

Because of the Company's small size, we are not required to comply with the federal Family and Medical Leave Act ("FMLA"). However, we recognize that our employees may occasionally need to take unpaid leave to care for a new child, to care for a seriously ill family member, to handle an employee's own medical issues, or to handle issues relating to a family member's military service, possibly including caring for a family member who is injured while serving in the military.

If you anticipate that you might need time off to deal with family and medical issues, please speak with your supervisor. We will seriously consider every request on a case-by-case basis.

### State Family and Medical Leave:

A female employee of a company with at least 6 employees who has completed the initial probationary period set by the terms of her employment may qualify for up to 8 weeks of state maternity leave for the purpose of giving birth or adopting a child under the age of 18 or for adopting a child under the age of 23 if the child is mentally or physically disabled. An additional 24 hours per year may be taken in state leave to accompany a minor child or relative age 60 or older to medical and dental appointments. All time off that qualifies as family and medical leave will be counted against the employee's federal and, if applicable, state family and medical leave entitlement to the fullest extent permitted by law.

### 6.6 Workers' Compensation Leave

Any employee who is unable to work due to a work related injury or illness and who is eligible for Workers' Compensation benefits will be provided an unpaid leave for the period required.

### 6.7 Bereavement Leave

In the event of a death in the immediate family, employees may have up to three working days, with pay, at their regular straight time rate or base salary, to handle family affairs and attend the funeral. "Immediate family" is defined as: father, mother, brother, sister, spouse, domestic partner, child, mother-in-law, father-in- law, grandparents and grandchildren.

### 6.8 Jury Duty

U.S. citizens have a civic obligation to provide jury duty service when called. Employees are entitled up to three working days, with pay, at their regular straight time or base salary for jury duty.

By state law, all employees (including part-time and temporary employees who were scheduled to work for the three months preceding jury service) are entitled to regular wages for the first three days of jury duty. After the first three days, the state will pay $40 per day.

The employee must bring in the jury duty notice as soon as it is received so that appropriate arrangements can be made to cover his or her duties. Employees are required to call in or report for work on those days or parts of days when their presence in court is not required.

### 6.9 Voting Time

Employees who are registered voters and who lack nonworking hours when polls are open to vote in any local, state, and national election may take off the first two hours that polls are open without pay after applying for a leave of absence from their employer.

# At-Will Employment Agreement and
# Acknowledgement of Receipt of Employee Handbook

**Employee:**

I acknowledge that I have been provided with a copy of the Triffletti & Costa P.C. (the "Company") Employee Handbook, which contains important information on the Company's policies, procedures and benefits, including the policies on Anti-Harassment/Discrimination, Substance Use and Abuse and Confidentiality. I understand that I am responsible for familiarizing myself with the policies in this handbook and agree to comply with all rules applicable to me.

I understand and agree that the policies described in the handbook are intended as a guide only and do not constitute a contract of employment. I specifically understand and agree that the employment relationship between the Company and me is at-will and can be terminated by the Company or me at any time, with or without cause or notice. Furthermore, the Company has the right to modify or alter my position, or impose any form of discipline it deems appropriate at any time. Nothing in this handbook is intended to modify the Company's policy of at-will employment. The at-will employment relationship may not be modified except by a specific written agreement signed by me and an authorized representative of the Company. This is the entire agreement between the Company and me regarding this subject. All prior or contemporaneous inconsistent agreements are superseded.

I understand that the Company reserves the right to make changes to its policies, procedures or benefits at any time at its discretion. However, the at-will employment agreement can be modified only in the manner specified above. I further understand that the Company reserves the right to interpret its policies or to vary its procedures as it deems necessary or appropriate.

I have received the Company Employee Handbook. I have read (or will read) and agree to abide by the policies and procedures contained in the Handbook.

By: _____

Date: _____

F

Sent from Yahoo Mail for iPh·

Begin forwarded message:

On Monday, March 14, 2022, 7:56 AM, Brianna Mellor <BMM@Plymouthlaw.com> wrote: ·

Hope you feel better.  I'll deal with Steve without having to mention your concerns. I thought I heard him say something about black, but I was on a call. He's harmless but clueless to what is appropriate in the office. And this is why I stay away from employing African Americans. Old school as he puts it.

Feel better.

Brianna M. Mellor

*Controller*

*Triffletti & Costa PC*

*Triff Realty Trust*

*124 Long Pond Road*

*Plymouth MA 02360*

*p:508.746.1464*

*F:508.746.9205*

www.plymouthlaw.com

**\*Important Notice:**

Triffletti & Costa, PC continues to monitor developments around COVID-19 and recognizes that some of our clients may be affected by the global pandemic. As always, our primary focus is the safety of our clients, employees and the communities we serve. Internally, our firm is taking necessary steps to ensure the well-being of our clients and employees and prevent any

E

potential legal service disruptions, including providing remote access capabilities and continuity plans for servicing our clients.

Wishing you all the best during this challenging time. Be safe & stay healthy.

My job includes exceptional client service. If you would like to comment on the service you have received, please email your feedback to trif@plymouthlaw.com.

**This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs. 2510-2521 and is legally privileged.**

**The information contained in this email is confidential and protected by Attorney/Client and/or Attorney/Work Product Privileges. It is intended solely for the use and view of the intended Addressee and the Privileges are not waived by virtue of this having been sent by email. If the person actually receiving this transmission or any other reader of these documents is not the named recipient, the employee or the agent of said recipient authorized to read these documents, be advised that, any use, dissemination, distribution or copying of this communication is strictly prohibited.**

**If you are not the intended recipient and you have received this email in error, please reply to us or notify us immediately by telephone at 508-746-1464 and destroy or delete this communication and related documents immediately.**

**Thank You.**

**From:** Marina Morgado <morgadomarina@yahoo.com>
**Sent:** Monday, March 14, 2022 4:28 AM
**To:** Brianna Mellor <BMM@Plymouthlaw.com>
**Subject:** Out sick

Sorry to text you so early. I won't be in today. I don't want to make a big deal and jeopardize my job but does Steve think I'm black? He often talks about how "black I get and it's because I was born in Africa". I have explained to him that both my parents are white and he just laughs and says... but you were born in Africa. Does he not understand? It really bothers me. I don't have an issue with being "black" African American, but I'm not and I really wish he would stop the nonsense and educate himself. I'm afraid to say anything because I don't want to get fired.

See you tomorrow.

Sent from Yahoo Mail for iPhone

# Fw: Covering for KNK and delegating to AAW

From:  Marina Morgado (morgadomarina@yahoo.com)

To:  ryan@ryanjmatthews.com

Date:  Saturday, April 6, 2024 at 08:55 AM EDT

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Tuesday, November 8, 2022, 2:04 PM, Marina Morgado <mtm@plymouthlaw.com> wrote:

Marina Morgado
Triffletti & Costa, P.C.
124 Long Pond Road
Suite 20
Plymouth, MA 02360
508-746-1464
Fax: 508-746-9205

This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs. 2510-2521 and is legally privileged.

The information contained in this email is confidential and protected by Attorney/Client and/or Attorney/Work Product Privileges. It is intended solely for the use and view of the intended Addressee and the Privileges are not waived by virtue of this having been sent by email. If the person actually receiving this transmission or any other reader of these documents is not the named recipient, the employee or the agent of said recipient authorized to read these documents, be advised that, any use, dissemination, distribution or copying of this communication is strictly prohibited.

If you are not the intended recipient and you have received this email in error, please reply to us or notify us immediately by telephone at 508-746-1464 and destroy or delete this communication and related documents immediately.

Thank You.

**From:** Marina Morgado
**Sent:** Thursday, September 15, 2022 11:13 AM
**To:** Brianna Mellor <bmm@plymouthlaw.com>
**Subject:** Covering for KNK and delegating to AAW

I have requested to speak with KRL today.  After giving a lot of thought, I think it is the best thing for my work day and stress level,  that going forward KRL manage AAW, as I know that is what she thrives on.  After hearing a conversation between Erin and Christine this morning, I really do not feel comfortable delegating to Alison anymore.   A lot of talk goes on behind my

about:blank

1/3

back and I am really only here to work.   I have 4 weeks of this shitshow left, which to be honest with you it is not the work, but the lack of support and the bullying that goes on.

I want you to know that I am at the end of my rope with this drama and the only way that I can think of is to pass the responsibility to Katie on handling Alison. I have never experienced such unprofessionalism from grown women and I just don't have it in me to entertain it. I am hoping these 4 weeks go by quickly and if things don't get better, I would like to discuss with you giving it all to Katie.  But I am not there yet.  I just want to stay busy with my work and she can have the drama.

I am sorry to bother you with this, but it affects my day and it needs to stop.

I am also requesting to review my personnel file. I know we have spoken about this and it's been some time.

Thank you,


Marina Morgado

Triffletti & Costa, P.C.

124 Long Pond Road

Suite 20

Plymouth, MA 02360

508-746-1464

Fax: 508-746-9205


This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs. 2510-2521 and is legally privileged.


The information contained in this email is confidential and protected by Attorney/Client and/or Attorney/Work Product Privileges.  It is intended solely for the use and view of the intended Addressee and the Privileges are not waived by virtue of this having been sent by email. If the person actually receiving this transmission or any other reader of these documents is not the named recipient, the employee or the agent of said recipient authorized to read these documents, be advised that, any use, dissemination, distribution or copying of this communication is strictly prohibited.


If you are not the intended recipient and you have received this email in error, please reply to us or notify us immediately by telephone at 508-746-1464 and destroy or delete this communication and related documents immediately.


Thank You.

## Fw: IRA

From:  Marina Morgado (morgadomarina@yahoo.com)

To:    morgadomarina@yahoo.com

Date:  Monday, April 8, 2024 at 05:34 PM EDT

**From:** Brianna Mellor
**Sent:** Friday, October 14, 2022 1:59 PM
**To:** Marina Morgado <mtm@plymouthlaw.com>
**Subject:** IRA

Due to the size of the firm we do not keep personnel files.  Is there anything specific you need?  If you need copies of paystubs and/or W2's  can get those by the end of the day. Let me know.

As far as involving Steve I don't thing that is necesarry.  I did speak with Erin several times and based on what was said whic I can't get into full details with you I was right by saying that it is not anything you have done. Her retaliation toward you is a reflection of how she feels about Kristen.  Now that Kristen is coming back I will definately keep an eye on how things go.

Thank you,

Brianna M. Mellor

*Controller*

*Triffletti & Costa PC*

*Triff Realty Trust*

*124 Long Pond Road*

*Plymouth MA 02360*

*p:508.746.1464*

*F:508.746.9205*

www.plymouthlaw.com

My job includes exceptional client service. If you would like to comment on the service you have received, please email your feedback to trif@plymouthlaw.com.

**This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs. 2510-2521 and is legally privileged.**

**The information contained in this email is confidential and protected by Attorney/Client and/or Attorney/Work Product Privileges.  It is intended solely for the use and view of the intended Addressee and the Privileges are not waived by virtue of this having been sent by email.  If the person actually receiving this transmission or any other reader of these documents is not the named recipient, the employee or the agent of said recipient authorized to read these documents, be advised that, any use, dissemination, distribution or copying of this communication is strictly prohibited.**

**If you are not the intended recipient and you have received this email in error, please reply to us or notify us immediately by telephone at 508-746-1464 and destroy or delete this communication and related documents immediately.**

On Friday, October 14, 2022, 1:55 PM, Marina Morgado <mtm@plymouthlaw.com> wrote:

Thank you. I know we've discussed this and Ive asked several times. I know you're busy but I'd like to take some time and go over my personnel file. Also, we were supposed to meet and discuss maybe talking to FST about what has been going on with Erin the past 3-4 months.

Marina Morgado

Triffletti & Costa, P.C.

124 Long Pond Road

Suite 20

Plymouth, MA 02360

508-746-1464

Fax: 508-746-9205

This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs. 2510-2521 and is legally privileged.

The information contained in this email is confidential and protected by Attorney/Client and/or Attorney/Work Product Privileges. It is intended solely for the use and view of the intended Addressee and the Privileges are not waived by virtue of this having been sent by email. If the person actually receiving this transmission or any other reader of these documents is not the named recipient, the employee or the agent of said recipient authorized to read these documents, be advised that, any use, dissemination, distribution or copying of this communication is strictly prohibited.

If you are not the intended recipient and you have received this email in error, please reply to us or notify us immediately by telephone at 508-746-1464 and destroy or delete this communication and related documents immediately.

Thank You.

**From:** Brianna Mellor
**Sent:** Friday, October 14, 2022 1:52 PM
**To:** Marina Morgado <mtm@plymouthlaw.com>
**Subject:** IRA

https://www.capitalgroup.com/individual/accounts/login.htm

There is a sign up now button and it will prompt for your acct # etc. That info will be on your statement.

Brianna M. Mellor

*Controller*

*Triffletti & Costa PC*

*Triff Realty Trust*

*124 Long Pond Road*

*Plymouth MA 02360*

*p:508.746.1464*

*F:508.746.9205*

www.plymouthlaw.com

My job includes exceptional client service. If you would like to comment on the service you have received, please email your feedback to trif@plymouthlaw.com.

**This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Secs. 2510-2521 and is legally privileged.**

**The information contained in this email is confidential and protected by Attorney/Client and/or Attorney/Work Product Privileges. It is intended solely for the use and view of the intended Addressee and the Privileges are not waived by virtue of this having been sent by email. If the person actually receiving this transmission or any other reader of these documents is not the named recipient, the employee or the agent of said recipient authorized to read these documents, be advised that, any use, dissemination, distribution or copying of this communication is strictly prohibited.**

**If you are not the intended recipient and you have received this email in error, please reply to us or notify us immediately by telephone at 508-746-1464 and destroy or delete this communication and**

**related documents immediately.**

**Thank You.**

Save as PDF                                                                                                      Reset

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court |
|---|---|---|
| Help-Party Information | 2483CV00841 | Superior Court |

COUNTY | Plymouth Superior Court (Plymouth)

| **Plaintiff** | Marina Morgado | **Defendant:** | ✓ F. Steven Triffletti, Franklin Ashley Triffletti, Alla |
|---|---|---|---|
| ADDRESS: | East Taunton, Bristol County, Massachusetts | ADDRESS: | 56 Boot Pond Road, Plymouth, Ma |

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT OF THE TRIAL COURT
PLYMOUTH COUNTY

| **Plaintiff Attorney:** ✓ Ryan J. Matthews, Esq. | **Defendant Attorney:** ✓ |
|---|---|
| ADDRESS: 115 Sandwich Street, Second Floor, Plymouth, MA | ADDRESS: |

OCT  9 2024

| BBO: | 654798 | BBO: |
|---|---|---|

Add Parties          Remove Pa—

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ● YES    ○ NO |

**\*If "Other" please describe:**

Is there a claim under G.L. c. 93A?                    Is there a class action under Mass. R. Civ. P. 23?
○ YES    ○ NO                                            ○ YES    ○ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money dam
(Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

#### TORT CLAIMS

A. Documented medical expenses to date

   1. Total hospital expenses
   2. Total doctor expenses                                                                    $20,000.00
   3. Total chiropractic expenses
   4. Total physical therapy expenses
   5. Total other expenses (describe below)                                          $2,000,000.00

   Plaintiff is seeking damages to compensate her for her emotional

                  Subtotal (1-5):    $2,020,000.00

B. Documented lost wages and compensation to date                                    $75,000.00

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages

F. Other documented items of damages (describe below)

                  TOTAL (A-F):    $2,095,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

Plaintiff was forced to endure harassment and bullying from a colleague. Defendants allowed the behavior to continue despite multiple meetings with Plaintiff to discuss resolution. Plaintiff is also asserting a claim seeking damages for emotional distress

#### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Add Claim          Delete C

| Signature of Attorney/Self-Represented Plaintiff: X | Date: | October 9, 2024 |
|---|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

Superior Court Civil Action Cover Sheet

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my client court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X | Date: ⌐ - 5- 2 4 |
|---|---|

SC0001: 02/24      www.mass.gov/courts      Date/Time Printed:08-22-2024 1

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
# SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality†*

AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. (A)
AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. (A)
AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal Affairs of Entities (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

### PA Civil Actions Involving Incarcerated Party ‡

PA1 Contract Action involving an Incarcerated Party (A)
PB1 Tortious Action involving an Incarcerated Party (A)
PC1 Real Property Action involving an Incarcerated Party (F)
PD1 Equity Action involving an Incarcerated Party (F)
PE1 Administrative Action involving an Incarcerated Party (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal Injury/Property Damage (F)
B04 Other Negligence - Personal Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/ Non-residential (F)

### RP Real Property

C01 Land Taking
C02 Zoning Appeal, G.L. c. 40A
C03 Dispute Concerning Title
C04 Foreclosure of a Mortgage
C05 Condominium Lien & Charges
C99 Other Real Property Action

### MC Miscellaneous Civil Action:

E18 Foreign Discovery Proceeding
E97 Prisoner Habeas Corpus
E22 Lottery Assignment, G.L. c. 10, § 28

### AB Abuse/Harassment Preventic

E15 Abuse Prevention Petition, G.L. c. 209A
E21 Protection from Harassment, G.L. c. 258

### AA Administrative Civil Action:

E02 Appeal from Administrative Agency, G.L. c. 30A
E03 Certiorari Action, G.L. c. 249, § 4
E05 Confirmation of Arbitration Awards
E06 Mass Antitrust Act, G.L. c. 93, § 9
E07 Mass Antitrust Act, G.L. c. 93, § 8
E08 Appointment of a Receiver
E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A
E10 Summary Process Appeal
E11 Worker's Compensation
E16 Auto Surcharge Appeal
E17 Civil Rights Act, G.L. c.12, § 11H
E24 Appeal from District Court Commitment, G.L. c.123, § 9(b)
E94 Forfeiture, G.L. c. 265, § 56
E95 Forfeiture, G.L. c. 94C, § 47
E99 Other Administrative Action
Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B
Z02 Appeal Bond Denial

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12
E14 SDP Petition, G.L. c. 123A, § 9(b)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M
E27 Minor Seeking Consent, G.L. c.112, § 12

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☐ YES ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff s state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including th statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, exce otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

10/28/24

3

| | CIVIL DOCKET NO. | Trial Court of Massachusetts |
|---|---|---|
| **Summons** | 2483CV00841 | **The Superior Court** |

| CASE NAME: | | |
|---|---|---|
| | | Robert S. Creedon, Jr.      Clerk of Courts |
| Marina T. Morgado     Plaintiff(s) | | Plymouth      County |
| **vs.** | | **COURT NAME & ADDRESS:** |
| F. Steven Triffletti, Esq., | | Plymouth Superior Court |
| Franklin Ashley Triffletti, Esq., | | 52 Obery Street |
| Allan J. Costa, Esq., and | | Plymouth, MA 02360 |
| Triffletti & Costa, P.C.    Defendant(s) | | |

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 2 8 2024

Clerk of Court

THIS SUMMONS IS DIRECTED TO <u>Franklin Ashley Triffletti, Esq.</u>(Defendant's name)

▽

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the      Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

     a) Filing your **signed original** response with the Clerk's Office for Civil Business,      Court

         (address), by mail or in person **AND**

     b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. ___Michael D. Ricciuti___ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS



**Plymouth County Sheriff's Office**    22 Cottage Street, Brockton MA 02301   Telephone (508) 580-2110
**Plymouth, SS**

**10/16/2024**

I hereby certify and return that on 10/16/2024 at 12:32 PM I served a true and attested copy of the Summons, Complaint, Civil Action Cover Sheet, Civil Tracking Order, Copies of Subpoenas (3) and Plaintiff's Request for Admissions in this action in the following manner: To wit, by delivering in hand to Franklin Ashley Triffletti, Esq. at 124 Long Pond Road Suite 20 Plymouth, MA 02360 Basic Service Fee ($30.00) Attest ($5.00) Conveyance ($4.50) Travel ($3.20) Postage and Handling ($3.00) Total: $45.70

**Deputy Sheriff David Coache**                                        **Deputy Sheriff**

Date:

rev. 7/21



The Law Office of
# Ryan J. Matthews

October 21, 2024

Plymouth County Superior Court
Attn.: Superior Court Clerk's Office
52 Obery Street
Plymouth, MA 02360

Re:     Marina T. Morgado
        v. F. Steven Triffletti, Esq., Franklin Ashley Triffletti, Esq.,
          Allan J. Costa, Esq., and Triffletti & Costa, P.C.
        Plymouth Superior Court
        Docket No.: 2483CV00841

Dear Sir or Madam:

Enclosed herein for filing, please find the Return of Service on Franklin Ashley Triffletti, served in-hand on October 16, 2024.

Kindly file accordingly.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Ryan J. Matthews, Esquire

RJM/mb
Enc.

cc:          client

115 Sandwich Street | Second Floor | Plymouth, MA 02360
Phone: (508) 747-0700   Fax: (508) 747-3335
E-Mail: Ryan@RyanJMatthews.com

| Summons | CIVIL DOCKET NO.<br>2483CV00841 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | Robert S. Creedon, Jr. | Clerk of Courts |
| CASE NAME: | | Plymouth | County |
| | | COURT NAME & ADDRESS: | |
| Marina T. Morgado | Plaintiff(s) | Plymouth Superior Court | |
| VS. | | 52 Obery Street | |
| F. Steven Triffletti, Esq.,<br>Franklin Ashley Triffletti, Esq.,<br>Allan J. Costa, Esq., and<br>Triffletti & Costa, P.C. | Defendant(s) | Plymouth, MA 02360 | |

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 2 0 2024

THIS SUMMONS IS DIRECTED TO ___Triffletti & Costa, P.C.___ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the                           Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business,                           Court

    ———————————————————————(address), by mail or in person **AND**

    b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. _Michael D. Ricciuti_ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS



**Plymouth County Sheriff's Office**          22 Cottage Street, Brockton MA  02301   Telephone (508) 580-2110
**Plymouth, SS**

10/22/2024

I hereby certify and return that on 10/18/2024 at 1:33 PM I served a true and attested copy of the Summons, Complaint, Civil Action Cover Sheet, Civil Tracking Order, Copies of Subpoenas (3) and Plaintiff's Request for Admissions in this action in the following manner: To wit, by delivering in hand to Steven Triffletti, Esq., agent, person in charge at the time of service for Triffletti & Costa, P.C. at 124 Long Pond Road Suite 20 Plymouth, MA 02360 Basic Service Fee ($30.00) Attest ($5.00) Postage and Handling ($3.00) Total: $38.00

**Deputy Sheriff David Coache**                                            **Deputy Sheriff**

Date:

rev. 7/21

10/29/24                                                                                  5

| | CIVIL DOCKET NO. | **Trial Court of Massachusetts** |
|---|---|---|
| **Summons** | 2483CV00841 | **The Superior Court** |

| CASE NAME: | | Robert S. Creedon, Jr. | Clerk of Courts |
|---|---|---|---|
| | | Plymouth | County |

Marina T. Morgado          Plaintiff(s)
                    vs.

F. Steven Triffletti, Esq.,
Franklin Ashley Triffletti, Esq.,
Allan J. Costa, Esq., and
Triffletti & Costa, P.C.          Defendant(s)

COURT NAME & ADDRESS:

Plymouth Superior Court

52 Obery Street

Plymouth, MA 02360

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT - DEPT OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 2 9 2024

THIS SUMMONS IS DIRECTED TO ___F. Steven Triffletti, Esq.___ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the                      Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,                      Court (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. <u>Michael D. Ricciuti</u> , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _____

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

PROOF OF SERVICE OF PROCESS



**Plymouth County Sheriff's Office     22 Cottage Street, Brockton MA  02301   Telephone (508) 580-2110**
**Plymouth, SS**

10/22/2024

I hereby certify and return that on 10/18/2024 at 1:33 PM I served a true and attested copy of the Summons, Complaint, Civil Action Cover Sheet, Civil Tracking Order, Copies of Subpoenas (3) and Plaintiff's Request for Admissions in this action in the following manner: To wit, by delivering in hand to F. Steven Triffletti, Esq. at Triffletti & Costa 124 Long Pond Road Suite 20 Plymouth, MA 02360 Basic Service Fee ($30.00) Attest ($5.00) Conveyance ($4.50) Travel ($3.20) Postage and Handling ($3.00) Total: $45.70

**Deputy Sheriff David Coache**

**Deputy Sheriff**

Date:

rev. 7/21

| **Summons** | CIVIL DOCKET NO.<br>2483CV00841 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

**CASE NAME:**

Marina T. Morgado

Plaintiff(s)

**VS.**

F. Steven Triffletti, Esq.,
Franklin Ashley Triffletti, Esq.,
Allan J. Costa, Esq., and
Triffletti & Costa, P.C.

Defendant(s)

| Robert S. Creedon, Jr. | Clerk of Courts |
|---|---|
| Plymouth | County |

COURT NAME & ADDRESS:

Plymouth Superior Court

52 Obery Street

Plymouth, MA 02360

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT OF THE TRIAL COURT
PLYMOUTH COUNTY

OCT 29 2024

Clerk of Court

THIS SUMMONS IS DIRECTED TO ___Allan J. Costa, Esq.___ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the                         Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business,                         Court
                                  (address), by mail or in person **AND**

    b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. _Michael D. Ricciuti_ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

 **Plymouth County Sheriff's Office**      22 Cottage Street, Brockton MA  02301   Telephone (508) 580-2110
**Plymouth, SS**
10/22/2024

I hereby certify and return that on 10/21/2024 at 9:25 AM I served a true and attested copy of the Summons, Complaint, Civil Action Cover Sheet, Civil Tracking Order, Copies of Subpoenas (3) and Plaintiff's Request for Admissions in this action in the following manner: To wit, by delivering in hand to , agent, person in charge at the time of service for Allan J. Costa, Esq. at 124 Long Pond Road Suite 20 Plymouth, MA 02360 Basic Service Fee ($30.00) Deputy Time Spent ($40.00) Attest ($5.00) Conveyance ($4.50) Travel ($3.20) Postage and Handling ($3.00) Total: $85.70

**Deputy Sheriff David Coache**                                    **Deputy Sheriff**

Date:

# EXHIBIT

# 2

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss                                    SUPERIOR COURT DEPARTMENT

MARINA T. MORGADO,

      Plaintiff,

v.

F. STEVEN TRIFFLETTI, ,                              Civil Action No. 2483-cv-00841
FRANKLIN ASHLEY TRIFFLETTI,
ALLAN J. COSTA, AND
TRIFFLETTI & COSTA, P.C.,

      Defendants.

## NOTICE OF FILING OF NOTICE OF REMOVAL

To:    Plymouth County Superior Court
       52 Obery Street
       Plymouth, MA 02630

      PLEASE TAKE NOTICE that a Notice of Removal in the above action from the Plymouth

County Superior Court has been duly filed in the United States District Court for the District of

Massachusetts.  Attached hereto as Exhibit A is a copy of that Notice of Removal.

Respectfully submitted,

F. STEVEN TRIFFLETTI, ,
FRANKLIN ASHLEY TRIFFLETTI,
ALLAN J. COSTA, AND
TRIFFLETTI & COSTA, P.C.

By their attorneys,

*/s/ John G. Bassilakis*
Stephen T. Paterniti, BBO #564860
Stephen.Paterniti@jacksonlewis.com
Austin D. Jones, BBO #709313
Austin.Jones@jacksonlewis.com
John G. Bassilakis, BBO #710734
John.Bassilakis@jacksonlewis.com
Jackson Lewis P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
Dated: November 5, 2024                                (617) 367-0025

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2024 a true copy of the above document was served via email upon:

Ryan J. Matthews, Esq.
115 Sandwich Street, Second Floor
Plymouth, MA 02360
Ryan@RyanJMatthews.com
Attorney for Plaintiff

*/s/ John G. Bassilakis*
Jackson Lewis P.C.

4886-8034-8661, v. 1

2